Note.—See under (1) 39 Cyc. p. 1450. (2) 39 Cyc. pp. 1452, 1454, 1458. (3) 39 Cyc. p. 1458. See under (1. 2) anno. 38 L. R. A. (N.S.) 4: 27 R. C. L. p. 483; 3 R. C. L. Supp. p. 1514.

## FIRST NATIONAL BANK OF HEALDTON v. DUNLAP et al.

No. 14101—Opinion Filed March 22, 1927.

(Syllabus.)

Judgment—Lien—Nonliability of Oil and Gas Leasehold Interest.

While an oil and gas lease which "grants, leases, and lets" certain land for oil and gas mining purposes, conveys to the lessee an estate in the realty described therein, such interest is not real estate within the meaning of section 690, C. O. S. 1921, which gives a judgment creditor a lien upon the "real estate" belonging to the judgment debtor.

Error from District Court, Carter County; Thos. W. Champion, Judge.

Judgment for First National Bank of Healdton against E. Dunlap. From an order of court recalling execution and denying judgment lien on an oil and gas lease owned by defendant at date of judgment and transferred to Turman Oil Company before execution served, plaintiff appeals. Affirmed.

Potterf & Gray, for plaintiff in error.

H. A. Ledbetter, R. H. Ledbetter, and Ledbetter, Stuart, Bell & Ledbetter, for defendants in error.

John F. Goshorn, amicus curiae.

BRANSON, C. J. Herein is prosecuted error from the district court of Carter county. In 1921, the First National Bank of Healdton obtained a final judgment in the sum of $3,300 against E. Dunlap. At the time it became final the said E. Dunlap was the owner of an undivided one-tenth interest in a producing oil and gas lease covering certain lands located in the said county of Carter, the description of which is unnecessary. Execution was not issued on the said judgment until the 27th day of November, 1922. Within a few days after execution was issued, the sheriff of said county levied upon, and had appraised for the purpose of sale, the said undivided interest in the said oil and gas lease, so owned by the said E. Dunlap at the time said judgment was rendered against him. Between the date of the finality of the judgment and the issuance and levy of the execution, the said E. Dunlap had sold. transferred, and assigned for value his said undivided interest in the said oil and gas lease to the Turman Oil Company, a corporation, and shortly after the levy of the said execution the Turman Oil Company filed a motion in the said cause, praying that the execution as to the said oil and gas lease estate be revoked, and that the levy thereof upon the same be quashed. This motion was by the court on the 30th day of December, 1922, sustained, upon the ground that the said judgment so rendered as aforesaid against the said E. Dunlap did not constitute a lien upon the oil and gas lease interest owned by the defendant Dunlap, and not constituting a lien thereon, same could not be made subject to execution against, after it had been sold and transferred for value. From the order recalling the execution and quashing the same as aforesaid. the plaintiff, the First National Bank of Healdton, perfected this appeal.

The sole question involved herein, irrespective of the phraseology of the assignments of error, is whether or not the judgment fastened a lien upon the interest owned by the judgment debtor in the said oil and gas lease. If it did, the Turman Oil Company purchased the same subject to such lien, and the order and judgment of the court quashing the levy was erroneous. The oil and gas lease in question had been developed and was producing.

It is the contention of the plaintiff in error that the said judgment was a lien upon the said oil and gas leasehold estate by reason of section 690, C. O. S. 1921. This section provides:

"Judgments of courts of record of this state, except county courts, and of courts of the United States rendered within this state, shall be liens on the real estate of the debtor within the county in which the judgment is rendered from and after the time the judgment is entered on the judgment docket. An attested copy of the journal entry of any such judgment. together with a statement of the costs taxed against the debtor in the case, may be filed in the office of the clerk of the district court of any county and such judgment shall be a lien on the real estate of the debtor within that county from and after the date of filing and entering such judgment on the judgment docket. The clerk shall enter such judgment on the appearance and judgment dockets in the same manner and within the same time after such judgment is filed in

his office as if rendered in the court of which he is clerk. Execution shall only be issued from the court in which the judgment is rendered. or in which a transcript of a county court judgment is first filed."

In its essence, the argument plaintiff in error makes is based upon certain definitions of "real property," and of the words "land," "real estate," and "premises," as found in the statutes of this state. It cites and quotes section 2323, C. O. S. 1921, which provides:

"The term 'real property' includes every estate, interest and right in lands, tenements and hereditaments."

And then argues:

"Section 2323 expressly states, not what real property includes. and not what the owner of real property owns, but that the term 'real property' includes every estate, interest and right in lands, tenements and hereditaments. If the term 'real property' does include every interest and right in land, then where the term 'real property' or 'real estate' is used in our statutes, surely we are justified in including in the terms of the statute every estate, interest, and right in lands and hereditaments; or, in other words, we are justified in substituting for the term 'real property or real estate,' the statutory definition, namely, every estate, interest and right in lands. tenements and hereditaments."

This quotation from the brief makes it apparent that the plaintiff in error wants this court to engraft section 2323, supra, upon and into section 690, supra, in order to determine the meaning of the said section 690, and thereby fix a lien in its favor upon the oil and gas leasehold estate at the time of the judgment.

We are unable to understand how plaintiff in error can present this argument to this court, for the said section 2323 is found in the statutes of this state under the head of "Crimes Against Property," which is one of the subheads of the general provisions of the statute on "Crimes and Punishments," and the said definition. argued by the plaintiff in error as if it were a general definition, is qualified by section 2312, which is only eleven sections preceding it, under the same head, "Crimes Against Property," by this definition:

"Whenever the terms mentioned in the following sections are employed in this chapter. they are deemed to be used in the senses hereafter affixed to them, except where a different sense plainly appears."

Following this last-named section are numerous definitions, including section 2323, but

they are made applicable solely to the chapter on "Crimes Against Property," and cannot under any condition be used to throw any light upon the meaning of the term "real estate," as found in said section 690, supra.

Again, he asserts that section 3560, C. O. S. 1921, is persuasive. This section provides:

"The words 'real property' are co-extensive with lands, tenements, and hereditaments."

Again. he cites section 5250, C. O. S. 1921, which provides:

"2. The words 'land, real estate and premises.' when used herein or in any. instrument relating to real property, are. synonyms," etc.

Without engaging in an extensive discussion of these definitions, the attempt to apply the same for interpretation purposes to the said section 690, C. O. S. 1921, is without logic or reason.

There is no statute in this state which provides that an estate in real property, which ordinarily means any interest extending from absolute fee ownership or seisin down to naked possession, shall be considered "real estate." Cases are cited from this court and other courts, in some of which expressions are found to the effect that an oil and gas lease creates an estate in real property, or an estate in the realty. Bentley v. Zelma, 76 Okla. 116, 184 Pac. 131; Rich v. Doneghey, 71 Okla. 204, 177 Pac. 86; Woodworth v. Franklin, 85 Okla. 27, 204 Pac. 452.

We deem that reference to these cases will enable the interested reader to discern the question in each particular opinion decided. and to undertake to amplify thereon serves no useful purpose herein.

On the other hand, the Turman Oil Company, in support of the judgment of the trial court, contends that the rule announced by this court in the case of Dutt v. Keaton. 33 Okla. 91, 124 Pac. 291, and the cases from this and other courts reasoning along the same line, should be applied to justify the action of the trial court in holding that the judgment did not fix a lien upon the interest of the defendant Dunlap in the oil and gas lease in question. As stated by this court in the case of Nicholson Corp. v. Ferguson, 114 Okla. 16, 243 Pac. 195, we will not undertake to iron out the apparent confusion in the cases cited, neither shall we undertake to harmonize all of them. As held by this court in the said last-mentioned

case, in dealing with the character of property created by an oil and gas lease in the form quoted in the said last-mentioned decision, we must recognize the distinction between real property, or real estate. and an estate in real property. The plaintiff in error in a supplemental brief says that the record in the instant case does not contain the form of the lease in question, but does state:

"It is to be regretted that the record in the case at bar does not disclose a copy of the oil and gas lease in question. We take the liberty of saying that the lease is, in so far as it is material to this discussion, almost identical with that part of the lease in the Nicholson Case, which is quoted in the opinion. With the lease in the case at bar before the court, there would be no question but that it is to be covered by the same rule as the lease in the Nicholson Case."

Even if we accept this statement from the plaintiff in error as true, and treat the lease as one in form the same as in the Nicholson Case. supra, as the plaintiff in error suggests that we should, we fail to see that the judgment of the trial court was erroneous. This court in the Nicholson Case. supra, reached the conclusion that the oil and gas lease there in question granted an estate in the realty covered thereby. It followed in reasoning the case of Ewert v. Robinson, of the 8th Circuit Court of Appeals, 289 Fed. 740. 35 A. L. R. 219, and the cases cited in support of the reasoning thereof and conclusion therein reached.

Conceding that the lease sought to be subjected to the lien in favor of the plaintiff in error created an estate or interest in the realty, it does not follow that any lien attached thereto under the said section 690, C. O. S. 1921. The plaintiff in error cites the case of First Nat. Bank of Davenport v. Bennett, 40 Iowa, 537. He quotes the syllabus in said case, to this effect:

"A judgment is a lien on a leasehold interest in real estate; and such lien takes precedence of subsequent conveyances or transfer of the lease by the judgment debtors."

In the body of the opinion in that case, the statute of the state of Iowa is set forth. and the same is modified by this phrase:

"The phrase 'real estate' includes lands, tenements, hereditaments and all rights, thereto and interest therein, equitable as well as legal."

If there were any such statute as this one just quoted in the state of Oklahoma,

our conclusion that an oil and gas lease in the form conceded creates an interest or estate in real property, then we must logically deduce that the judgment was a lien thereon. But the statute provides that the judgment creditor shall have a lien upon "real estate" owned by the judgment debtor in the county. The plaintiff in error would have this court go to the extent of holding that all and every kind of estate recognized in the law, which one, individual or corporate, may have in real property is itself real estate within the meaning of said section. While unquestionably such an oil and gas lease creates an interest or an estate in the realty. that interest or estate is not "real estate" in the sense in which the said section 690, supra, uses this terminology. It would unquestionably be within the power of the legislative body to make a judgment a lien upon every conceivable estate recognized by the law as capable of being owned by natural as well as corporate persons. But the statute relied upon as fixing the lien upon the interest of the defendant Dunlap in the realty created by the oil and gas lease does not go to that extent.

The judgment of the trial court quashing the levy on the oil and gas leasehold interest owned by the defendant at the time the judgment became a finality is without error, and is affirmed.

LESTER. HUNT, CLARK, RILEY, and HEFNER. JJ., concur.

MASON and PHELPS, JJ., dissent.

---

MASON, V. C. J. (dissenting). I cannot concur in either the reasoning or the conclusion reached by the majority opinion in this case.

To hold that an oil and gas lease is subject to a judgment lien can work no hardship, but, on the contrary, it would tend to prevent dishonest persons from dodging their legal obligations. The practical, every-day transactions dealing with oil and gas leases demonstrate the close relationship existing between oil and gas leases and conveyances of real estate. All are executed, delivered, and recorded in the same manner, and an abstract of the record title is invariably required before a transfer is made.

It is matter of common knowledge that an oil and gas lease is often worth a hundred times as much as the land itself. Why. then, should a judgment be a lien on the land and not on the lease? I realize, of course. that a judgment lien is a creature

of the statutes, and, except as therein de-fined, does not exist, but I do not think we should place such a forced or strained con-struction on the statutes as to limit the lien to the empty shell, while the valuable portion is permitted to escape.

In presenting my views with reference to the statutory and legal questions presented, it may be helpful if notice be first taken of the rights of the lessee created by an oil and gas lease.

No copy of the lease involved herein is contained in the record, but on suggestion of counsel for defendants in error in their brief, I will presume that it is a lease in the usual and ordinary terms, and was no doubt executed by the owner in fee simple of the lands covered thereby. I recognize the well-established rule that such an in-strument gives the lessee no absolute right or title to the oil or gas which might per-meate the strata underlying the sur-face of the land as in the case of coal or other solid minerals fixed in or forming a part of the soil itself. Ohio Oil Co. v. India-na, 177 U. S. 190, 20 Sup. Ct. 576, 40 L. Ed. 729. But, with respect to such oil and gas, he had certain rights in or qualified ownership thereof which may be more accurately stated as an exclusive right, subject to legislative control against waste and the like, to erect structures on the surface of the land and to explore therefor by drilling wells through the underlying strata and to take therefrom and reduce to possession and thus acquire absolute title to such oil and gas as might be found and obtained thereby. It is well established that this right is a proper sub-ject of sale and may be granted or reserved. These are the rights and interests in said land which the defendant, E. Dunlap, ac-quired by said oil and gas mining lease.

Such an estate and the conveyance of such right and interest were unknown to the common law and, therefore, it is ex-tremely difficult and practically impossible to apply the common-law rules of construc-tion thereto and say whether it is real, or personal property. Although, in many re-spects, it partakes of the nature of each, yet, strictly speaking, it is neither.

Counsel for defendants in error cite and rely very largely on the case of Duff v. Keaton, 33 Okla. 92, 124 Pac. 291, wherein it is held that a chattel real is "personalty." The majority opinion also refers to this case, but makes no comment on this holding. In that case, the court, as we understand the opinion, was considering whether or not the sale of a lease granting oil and gas mining privileges for a term of years should be made in compliance with section 5314, C. L. 1909 (now section 1273, C. O. S. 1921), re-lating to the "sale of realty" of a minor by the guardian.

Mr. Justice Williams, for whose opinions and ability I have the highest regard and the utmost respect, wrote the opinion of the court in that case. In the first part of the opinion, the court refers to, and quotes var-ious sections of the statutes from probate and guardianship procedure showing the au-thority of the guardian over the minor's es-tate. It is then pointed out that there is no guardianship or probate procedure ex-press y providing for the leasing of lands of a minor for oil and gas, or for agricul-tural purposes, and that, if it is necessary to follow the procedure provided for the sale of real estate in order to lease such land for oil and gas, it would also be nec-essary to follow the same procedure in or-der to lease the lands for agricultural, graz-ing, or commercial purposes for one year. The opinion then refers to several sections conferring general power and authority upon the guardian to manage the estate of the minor: to use the income and profits for the maintenance of the minor, and further providing for the supervision of the probate court upon the management, investment, and disposition of the estate. The court then, after the citation of authorities from other states, concludes that the guardian has au-thority to lease lands of the minor for agricultural, grazing, and commercial pur-poses and also for oil and gas purposes with-out following the procedure required in the sale of said lands. I agree with that hold-ing, but, in my opinion, the learned Justice might very well have ended the opinion with that determination. He did not, however, but devotes the latter part of the opinion to a discussion of the common-law rules rela-tive to a lease for years, and concludes, that an oil and gas lease for a term of years is a chattel real and that a chattel real is personal property. That part of the opinion, as I view it, was unnecessary to the deci-sion and, therefore, is dictum. I concede, how-ever, that an oil and gas lease for years is a chattel real. Not so much by the ap-plication of the common-law rules, but be-cause estates for years are specifically so designated by section 8405, C. O. S., 1921. I do not agree with that portion of the opin-ion which holds that a chattel real is per-sonal property, and the cases cited in sup-port of such contention do not sustain that

holding. Those cases merely hold that, upon the death of the lessee, a lease for a term of years is treated and considered as personal property. Those cases follow the general rule as announced in 1 Woerner's American Law of Administration, page 231, to the effect that leasehold estates and estates for years. were treated at common-law as personal property and that the same, upon the death of the lessee, descended to the administrator of his estate. This classification has caused much inconvenience and has been corrected in many states by statutory · enactments. The incongruity of this classification, with the original and fundamental distinction between personalty and realty, has been often acknowledged and is well known. Land and tenements, according to the books, are "things real." such as are permanent, fixed, immovable, which cannot be carried out of their places. Goods and chattels are things personal, such as are movable, and may attend the owner s person whenever he thinks proper to go. 2 Black. Com. 149. It is obvious that an estate for years does not fall within this description of personalty. The reason why an estate for years was originally treated as personalty is worth noticing and considering. In the infancy of the common law, the possessors of the land under leases from the lords were generally farmers or husbandmen and were regarded in those feudal times as an inferior class, existing rather for the convenience of superiors than for their own welfare. They were considered as bailiffs and servants, who were to receive and account for the profits at a settled price, rather than as having any property of their own. "And, therefore, they were not allowed to have a freehold estate, but their interest vested after their deaths in their executors. who were to make· up the accounts of their testator with the lord and other creditors. * * *" 2 Black. Com. 149. This was the original reason for assigning to land held for years, a place among chattels. It suited the convenience of the lords—the landholders—who made the laws that the estate should vest in the executors, as a chattel, and thus be subject to the debts of the testator. and not in the heir, as realty, and thus escape that charge.

This also discloses the characteristic difference between chattels and lands. The former went to the executor, and the latter to the heir. See Northern Bank of Kentucky v. Roosa, 13 Ohio Rep. 335.

It therefore. appears that at common law a leasehold estate or estate for· years was considered as an interest in real estate, but on the death of the lessee was not treated as such for the reasons above set forth. These reasons have long since ceased to exist, and, as a matter of fact, have never existed in the United States. Although oil and . gas leases were unknown at common law, yet they are so analogous to leasehold estates and estates for years that· the same rule, in my opinion, would be applicable, and the learned Judge, in writing Duff v. Keaton. was in error when he held that a chattel real is personal property. In this event. said judgment would be a lien on the oil and gas lease involved herein.

In my opinion, however, we are not limited to the foregoing construction of the common-law rules in order to reach the conclusion that a judgment is a lien on an oil and gas lease. but our statutes and the decisions of this court are also sufficient to support this conclusion.

Section 690, C. O. S. 1921, relating to judgment liens, provides as follows:

"Judgments of courts of record of this state, except county courts, and of courts of the United States rendered within this state, shall be liens on the **real estate** of the debtor within the county in which the judgment is rendered from and after the time the judgment is entered on the judgment docket. * * *"

Section 5250, C. O. S. 1921. provides:

"The words 'land,' 'real estate,' and 'premises,' when used herein, or in any instrument relating to real property, are synonyms, and shall be deemed to mean the same thing, and, unless otherwise qualified, to include lands, tenements. and hereditaments. * * *"

Section 3560, C. O. S. 1921, provides:

"* * * Second. The words 'real property' are co-extensive with lands, tenements, and hereditaments. * * *"

The term "real property" includes every estate, interest, and right in lands, tenements, and hereditaments. Section 2323, C. O. S. 1921.

I do not contend, of course. that the words "land" or "real estate" or "premises" are synonymous with tenements, hereditaments, or appurtenances, but the foregoing statutes, in my opinion. clearly provide that the words "real estate," when used therein, shall be equivalent to using the words "every estate, interest, and right in lands, tenements. and hereditaments."

By substituting this definition for the

words "real estate" in section 690, supra, it would read as follows:

"Judgments of courts of record of this state, except county courts, and of courts of the United States rendered within this state, shall be liens on **every estate, interest, and right in lands, tenements, and hereditaments** of the debtor within the county in which the judgment is rendered from and after which time the judgment is entered on the judgment docket."

Is an oil and gas lease, for a term of years or as long as oil or gas is produced in paying quantities, such an estate, interest, and right in land, tenements, and hereditaments as to be subject to a judgment lien as provided for in section 690, supra? An examination of the statutory provision relative to executions may throw some light on what was the intention of the lawmakers.

Section 696, C. O. S. 1921, provides:

"The writ of execution against the property of the judgment debtor, * * * shall command the officer to whom it is directed, that of the **goods** and **chattels** of the debtor he cause to be made the money specified in the writ; and for want of goods and chattels, he cause the same to be made of the **lands** and **tenements** of the debtor. * * *"

Section 698, C. O. S. 1921, provides:

"The officer to whom a writ of execution is delivered, shall proceed immediately to levy the same upon the **goods** and **chattels** of the debtor; but if no goods and chattels can be found, the officer shall indorse on the writ of execution, 'No goods,' and forthwith levy the writ of execution upon the lands and tenements of the debtor. * * *"

It is, therefore, apparent that our statutes relative to judgments and executions have divided all property into but two kinds or classification, viz.:

First: Goods and chattels.

Second: Lands and tenements.

It will be observed that no mention is made of chattels real. Under which classification, then, would chattels real most naturally fall in the light of other statutory provisions?

Many definitions of the words "goods and chattels" are to be found, some of which include chattels real, but as used in the foregoing statutes we think it was intended to mean goods and chattels personal, or such property and such goods and chattels as are visible, tangible, or movable, and, therefore, was not intended to include an oil and gas lease estate for a term of years. "Chattel real" is a distinct and different

term from anything listed under the definition of "goods."

In vol. 2, Words and Phrases (1st Series) p. 1095, we find the following which is applicable here:

"In construing the term 'chattels,' in a statute relative to the recording of mortgages of negroes, goods, or chattels, as not including chattels real, the court said that the word 'chattels' is 'so extensive that it may often mean chattels real or leasehold estates.' But it is a sound rule of interpretation that when an author makes use, first, of terms, each evidently confined and limited to a particular class of a known species of things, and then, after such specific enumeration, subjoins a term of very extensive signification, this term, however general and comprehensive in its possible import, yet, when thus used, embraces only things ejusdem generis; that is, of the same kind or species with those comprehended by the preceding limited and confined terms. In a word, the last is restricted to the subject-matter of the preceding terms. Now the terms 'negroes' and 'goods' are each confined to a known class of strictly personal estate; and the term 'chattels', following them immediately, means 'chattels ejusdem generis'; that is, personal chattels." Ex parte Leland (S. C.) I Nott & McC. 460, 462.

As we have heretofore seen, an oil and gas lease is a chattel real. Blackstone defines chattels real, according to Sir Edward Coke, 1 Inst. 118, to be such as concern or savor of the realty, as terms for years of land, and says they are called real chattels, as being interests issuing out of, or annexed to real estate, of which they have one quality, viz., immobility, which denominates them **real;** but want the other, viz., a sufficient legal indeterminate duration, which want it is that constitutes them chattels. 2 Black Com. 386. Chancellor Kent says (2 Com. 342):

"Chattels real are interests annexed to or concerning the realty, as a lease for years of land, and the duration of the term of the lease is immaterial provided it be fixed and determinate, and there be a reversion or remainder in fee in some other person."

In my opinion, an oil and gas lease or a chattel real is more nearly analogous to the second rather than the first classification of property as provided for in our statutes relative to judgments and executions as above set forth.

Numerous decisions of this court support the contention that an oil and gas lease is **an interest in real estate.** In Woodworth v. Franklin, 85 Okla. 27, 204 Pac. 452. in an

opinion by former Chief Justice Nicholson, this court held as follows:

"A contract for the sale of an oil and gas lease entered into by an alleged agent of the owner of such lease and a third person is invalid, under the statute of frauds, unless the authority of such agent to sell said lease be in writing, subscribed by such owner, and such authority must be specific and certain as to the authority conferred, the terms, description, and parties. so that such authority is disclosed by the writing itself, and recourse to parol evidence to show the intention of the parties is unnecessary."

An examinaion of the case discloses that there is no justification for the decision in that case except as holding that an oil and gas lease is an interest in real estate.

In Bentley v. Zelma Oil Co., 76 Okla. 116, 184 Pac. 131, in an opinion written by Mr. Justice Harrison, this court held that the conveyance of an interest in an oil and gas lease on land is a conveyance affecting real estate within the provisions of our statutes.

The case of Rich v. Doneghey, 71 Okla. 204, 177 Pac. 86, appears to hold, in effect, at least, that an oil and gas lease is a vested interest in the land.

In Nicholson v. Ferguson & Kingwood Oil Co., 114 Okla. 16, 243 Pac. 195, this court, in an opinion by Branson, V. C. J., held that, although the lessee does not own any of the oil and gas in place. he may and does, nevertheless, own an estate in the land for the purpose of entering, prospecting for, and removing the oil and gas.

In Pluto Oil & Gas Co. v. Miller, 95 Okla. 222, 219 Pac. 303, this court, speaking through Mr. Justice McNeill, held:

"An oil and gas mining lease executed by a full-blood heir of a deceased Creek Indian allottee upon his inherited lands is such a **conveyance of an interest in said lands** that, to be valid, the same must be approved, as required by section 9 of the Act of Congress of May 27. 1908."

To the same effect are: Hoyt v. Fixico, 71 Okla. 103, 175 Pac. 517; Rich v. Doneghey, 71 Okla. 204, 177 Pac. 86; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 Pac. 514; Brunson v. Carter Oil Co., 259 Fed. 656.

The Supreme Court of the United States in the case of United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844, held that an assignment of rents and royalties accruing under an oil and gas lease was a conveyance of an interest in the land.

This court, in Carter Oil Co. v. Popp, 70 Okla. 232, 174 Pac. 747, held, in substance,

that an oil and gas lease is such a grant of the use and occupancy of the homestead as requires the joint consent of both husband and wife.

In First National Bank of Davenport v. Bennett, 40 Iowa, 537, the Supreme Court of that state had a similar question before it, and in the syllabus announced the following rule:

"A judgment is a lien on a leasehold interest in real estate.; and such lien takes precedence of subsequent conveyances or transfers of the lease by the judgment defendants."

This case is cited in the majority opinion and an attempt is made to distinguish it from the case at bar by reason of the statutory provisions of Iowa. but, in my opinion, said provisions, in effect at least, are the same as those of this state which I have heretofore set out. The following is quoted in the body of that opinion, which discloses the statutory provisions of that state:

"It will be observed that the plaintiff's judgment against C. B. Bennett was obtained in May, 1871, and that the conveyance by him to Sarah Bennett was not made until February, 1872. Under our statute then in force, Rev. 1860, sections 4105-9, as now, Code section 2882. judgments were liens upon the real estate owned by the defendant in the county where rendered or filed; and, by Rev. section 29, subdiv. 8, and Code, section 45, subdiv. 8 the 'phrase real estate includes lands, tenements, hereditaments, and all right thereto and interest therein, equitable as well as legal.' The leasehold interest of C. B. Bennett in the lot whereon the improvements are situate was such a right to it as brought the same subject to the judgment lien under our statute. as above shown. This has been, in effect, so held several times by this court heretofore. See Cook & Sargent v. Dillon et al., 9 Iowa, 407; Pelan v. DeBevard et al., 13 Iowa, 53: Baldwin v. Thompson et al., 15 Iowa, 504."

In Bradford v. Morrison, 86 Pac. 6, the Supreme Court of Arizona announced the following rule:

"In the absence of statute. as well as under Rev. Stat. 1887. par. 2932, declaring that real property shall be co-extensive with lands, tenements, and hereditaments, an unpatented mining claim is heal property, within Acts 1891, p. 70, No. 50. sec. 4, declaring that a judgment when properly docketed shall be a lien on the real property of the debtor situate in the county."

This case appears to have been appealed to the Supreme Court of the United States. See Bradford v. Morrison, 212 U. S. 389, 53 L. Ed. 564 wherein the rule is announced:

"Unpatented lode mining claims are 'real property,' and as such are subject to the lien of a judgment recovered against their owner when docketed pursuant to Arizona Laws 1891, Act No. 50, sec. 4, making a docketed judgment a lien upon the judgment debtor's real property, the term being defined by a territorial statute in force when the judgment in question was rendered and docketed as co-extensive with lands, tenements, and hereditaments."

Taking the forgoing decisions and considering the general nature and meaning of the statutory provisions heretofore quoted, I am forced to the conclusion that, although an oil and gas lease may not be a freehold estate, yet it is such an interest in real estate as defined by our statutes above set forth as to be included within the words "real property" as used in section 690, supra. In that event, the lien of the judgment involved in the instant case had attached and existed at the time said conveyance was made by E. Dunlap to the Turman Oil Company and, therefore, in my opinion, was subject to the judgment lien of the First National Bank of Healdton.

Note.—See 34 C. J. p. 587. §898: 40 C. J. p. 1059. §676.