Reta Nadine HINDS, Appellant,

v.

PHILLIPS PETROLEUM COMPANY, a
corporation, Appellee.

No. 51038.

Supreme Court of Oklahoma.

Feb. 13, 1979.

As Amended Feb. 26, 1979.

John Board, Board & Boring, Guymon, for appellant.

Larry Field, Guymon, Kenneth Heady, C. J. Roberts, Bartlesville, Jack Ritchie, David B. McCall, Joe Cochran, T. L. Cubbage, Amarillo, Tex., for appellee.

OPALA, Justice:

This was a trespass action for damages occasioned by entrant's allegedly unauthorized construction of a pipeline from a producing well upon, and thence across, landowner's premises. Appeal was brought by landowner [Hinds] from summary judgment for the entrant, Phillips Petroleum Company [Phillips]. The dispositive issue presented is whether the oil-and-gas lessee of the property in question, Atlantic-Richfield Company [Richfield], did, by "contract" with Phillips to sell and deliver casinghead gas at the well head on the premises in suit, effectively transfer to Phillips Richfield's lease-granted right to lay pipelines on the demised land.

The land consists of a quarter section in Cimarron County. The lease was executed in 1959 and the "Casinghead Gas Contract" between Phillips and Richfield was entered into in 1973. Both instruments, recordable in form, were recorded.

The lease unmistakably seeks to confer upon Richfield, among other things, the right to lay pipelines when "necessary or convenient" "for the operation of said land alone or conjointly with neighboring lands" to produce or market the extracted substances. Richfield's contract plainly gives Phillips, to the extent permitted by the lease, "free entry" on the land and the right "to lay and maintain lines and install any equipment . . . necessary in connection with the purchase of Seller's [Richfield's] gas . . .".

The principal argument advanced is that Richfield's attempt to sever and separately convey a portion of its surface rights in the oil and gas lease was legally a nullity. Absent assignment of Richfield's entire "dominant estate" in the oil and gas lease, nothing could effectively pass to Phillips without Hinds' consent.

The cluster of rights comprised within an instrument we refer to "in deference to custom"[1] as an "oil and gas lease" includes a great variety of common-law interests in land. These fall under the rubric of *incorporeal hereditament* or *profit á prendre*. If granted to "one and his heirs and assigns forever", the interest is in fee. Where, as here, it is limited for a term of years, it is denominated a chattel real.[2] Whatever the name used, *the interest represented is one in land*, although the lease itself does not operate as a conveyance of any oil or gas *in situ* but constitutes merely a right to search for and reduce to possession such of these substances as might be found. Rather than a true lease, it is really a grant *in praesenti* of oil and gas to be captured in the lands described during the term demised and for so long thereafter as these substances may be produced.[3] Les-

1. *Rich v. Doneghey*, 71 Okl. 204, 177 P. 86, 89–90, 3 A.L.R. 352 (1918).

2. *Duff v. Keaton*, 33 Okl. 92, 124 P. 291, 42 L.R.A. (N.S.) 472 (1912).

3. *Mohoma Oil Co. v. Ambassador Oil Corp.*,

see's easement in the surface, which is incident to or implied from the lease (at times referred to as his "concurrent possession"), extends to such parts of the demised premises as are reasonably necessary for the purpose of exploration or production.[4] Although, as shown, an oil and gas lease creates an *interest or estate in realty*, it is not deemed *per se real estate*. In this respect a distinction is recognized in our law between *real estate* and an *estate in real property*.[5]

The casinghead gas contract under consideration doubtless involves more than just a sale of gas. It plainly transfers to Phillips some of Richfield's rights in the use of surface and part of its ownership in the gas produced from the premises before that gas is removed therefrom. The former of these interests falls under the rubric of lease-conferred easement, the latter belongs in the category of profit á prendre (fruits of the land not yet carried away). Both of these interests, clearly divisible if permissibly severed, are separately alienable under our law.

■ At common law, a mere right to remove minerals from the land of another is deemed nonexclusive and hence indivisible. But if either all minerals or exclusive right thereto be conveyed, *an interest in land passes* which is *divisible, assignable and inheritable*.[6] This rule of common law stands unaltered by our statutes and case law. It is hence in force.[7]

Hinds' lease vests in Richfield an exclusive right to search for and produce oil and gas. Since, as we recognize, an exclusive grant is divisible and profit á prendre capable of legal existence as a servitude "unattached" to land (in gross),[8] there is no reason why the contract under consideration, in conferring a portion of Richfield's profit á prendre, cannot stand as a valid transfer of an interest in real estate.

Except as may be limited by 41 O.S.1971 § 10, leasehold interests are freely alienable under our law, either in whole or in part. An exclusive right in the nature of profit á prendre, if granted in gross, may be transferred in gross, either in whole or in part. Divisibility is permissible so long as the servient owner's estate does not become burdened beyond the terms of the grant.[9] The transfer here in question neither appears, nor was alleged, to have resulted in a greater burden being imposed on the landowner, Hinds, than that assumed by the terms of her lease.

■ The conclusion we reach here, which is in harmony with two prior federal circuit court decisions rendered in diversity cases applying Oklahoma law,[10] is that the contract with Richfield effectively transferred to Phillips an interest in real property in the nature of surface use easement and a profit á prendre. Both interests are aliena-

Okl., 474 P.2d 950, 960 (1970); *Rich v. Doneghey*, supra, note 1; *Kolachny v. Galbreath*, 26 Okl. 772, 110 P. 902, 906, 38 L.R.A. (N.S.) 451 (1910).

4. *Rich v. Doneghey*, supra, n. 1; *Rennie v. Red Star Oil Co.*, 78 Okl. 208, 190 P. 391, 392 (1920); *Cities Service Oil Company v. Dacus*, Okl., 325 P.2d 1035, 1036 (1958); *Luttrell v. Parker Drilling Co.*, Okl., 341 P.2d 244, 246 (1959); *Marland Oil Co. of Oklahoma v. Hubbard*, 168 Okl. 518, 34 P.2d 278 (1934).

5. An overriding royalty was held not an interest in real property which creates a possessory right in the leasehold sufficient to support partition. *De Mik v. Cargill*, Okl., 485 P.2d 229, 232, 58 A.L.R.3d 1042, 1049 (1971). A judgment lien will not attach to an oil and gas lease. *First National Bank v. Dunlap*, 122 Okl. 288, 254 P. 729 (1927); *Pauline Oil & Gas Co. v. Fischer*, 185 Okl. 108, 90 P.2d 411 (1939); see

also, *Harmon v. Oklahoma Tax Commission*, 189 Okl. 475, 118 P.2d 205 (1941).

6. *Stanton v. T. L. Herbert & Sons*, 141 Tenn. 440, 211 S.W. 353 (1919).

7. 12 O.S.1971 § 2.

8. 60 O.S.1971 § 50(6).

9. 41 O.S.1971 § 15; *Callahan v. Martin*, 3 Cal.2d 110, 43 P.2d 788, 794 (1935); *Stanton v. T. L. Herbert & Sons*, supra note 6.

10. *Southwest Pipe Line Co. v. Empire Natural Gas Co.*, 33 F.2d 248, 252, 64 A.L.R. 1229 (8 Cir., 1929); *Greenshields v. Warren Petroleum Corporation*, 248 F.2d 61, 70 (10th Cir., 1957), cert. denied, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262; see 3A Summers, Oil & Gas § 597.1.

ble and none was impermissibly apportioned by the severance effected here. There is no policy of Oklahoma law against such transfers and the lease itself appears to authorize unrestricted assignments "in whole or in part". If the term "assignment", used in the lease, may be construed as synonymous with "transfer" or "alienation" rather than as its more technical common-law meaning would require,[11] a question we need not decide here, it is clear that alienation of separately severed lease-conferred interests was clearly within the parties' contemplation.

Richfield's lease-derived interests in real estate of Hinds (portions of which interests stand conveyed to Phillips), are legally divisible, were not impermissibly apportioned by Richfield's severance and could hence have been validly transferred in the casinghead gas contract without Hinds' consent. The contract, having been recorded, imparts notice to Hinds of its provisions.

Landowner relies on *Kentucky Pipe Line Co. v. Hatfield*, 223 Ky. 315, 3 S.W.2d 654 (Ky.1927). That case is distinguishable, as pointed out in *Phelps v. Fitch*, 255 S.W.2d 660, 662 (Ky.1953), by the very court which had sired that opinion. *Hatfield* dealt with a conveyance by the dominant estate owner to a third person of the right to lay pipe across the servient estate for *the purpose of carrying oil and gas from tracts other than those operated conjointly under the lease.* It is undisputed here that the transfer of rights to Phillips did not operate to benefit any premises other than those of landowner-lessor.

The judgment, found free from error, is affirmed.

All Justices concur.

---

11. In lease law "assignment" is distinguished from "sublease". The former means a transfer of assignor's entire interest for the whole term, whereas in a "sublease" the lessee retains some residue of interest. *Caudle v. Brannon*, 176 Okl. 394, 56 P.2d 131 (1936) and *Leckie v. Dunbar*, 177 Okl. 355, 59 P.2d 275, 277 (1931).