ENRON OIL & GAS COMPANY, Appellant,

v.

Virgil WORTH and Frieda M. Webb, Appellees.

No. 88285.

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 19, 1997.

---

James C.T. Hardwick, Donna N. Blakley, Sharon Taylor Thomas, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, for Appellant.

Larry L. Field, Rick Harbison, Larry L. Field, P.C., Guymon, for Appellees.

*MEMORANDUM OPINION*

GOODMAN, Presiding Judge.

This is an appeal from an order denying the plaintiff's quest for an injunction to prevent surface owners from interfering with seismic exploration for minerals. The issue is whether the owner of an unleased, undivided mineral interest may authorize a third party to enter onto the surface of land owned by another to conduct seismic operations. Based upon our review of the record on appeal and applicable law, we reverse and remand with directions.

I

Defendant Virgil Worth and his mother, defendant Frieda M. Webb, own the surface of six quarter sections in Texas County, Oklahoma, used as farm land. The land owned by Worth and Webb is part of a multi-section prospect in which Enron Oil & Gas Company wanted to conduct seismic operations to test for oil and gas formations. In May 1996, an agent of Enron approached Worth and offered to pay $5 per surface acre, plus any incidental damage to crops, for permission to enter upon the land. Worth did not accept the offer and denied Enron access to his land.

On August 20, 1996, Enron filed a petition alleging the defendants "have interfered and prevented Enron, its agents and employees, from entering ... to conduct seismic operations." Enron sought declaratory and injunctive relief. The trial court issued a temporary restraining order, and set a hearing for August 29 "at which time Defendants will be given an opportunity to show cause why the ... restraining order should not be made a temporary injunction."

The defendants counter-claimed alleging seismic testing would cause "substantial damage" to their land, Enron had not agreed to compensate them for damages, and their actual damages would be compounded because portions of the proposed testing area were "designated for a 1996–97 wheat crop, which will need to be planted immediately ... weather conditions permitting." The defendants sought actual and punitive damages.

After a hearing September 6, 1996, the trial court dissolved the temporary restraining order and granted Enron a temporary injunction covering the three quarter sections of the defendants' land for which Enron had obtained mineral leases or farmout agreements. With respect to the remaining three quarter sections, Enron argued it had "obtained its seismic permits from unleased mineral owners who clearly had the right to sever exploration rights (i.e. the right to conduct seismic testing) from the right to drill...." The court stated its belief that, although the mineral owners have the right to conduct geophysical exploration, they cannot sever that right from the right to drill and produce by granting permits to Enron. The court ordered the parties to submit briefs addressing the legal effect of the seismic permits.

On September 13, 1996, the court denied Enron's request for a temporary injunction covering the remaining three quarter sections. The court held that mineral owners "have an absolute right to go upon the property of the surface owner to the extent necessary to explore for or develop minerals located beneath the surface." However, because the "permits" did not grant Enron the right to drill and remove hydrocarbons, or require it to share the results of the seismic testing with the mineral owners, the court held that Enron did not have the right to go upon the land to conduct seismic testing, and that "Oklahoma law allows owners of surface interest only to allow geophysical exploration of minerals [which] would in no way damage or interfere with the right of the mineral owner." The court also held Enron had failed to prove irreparable harm, and the duration of seismic operations had been "totally unreasonable and ... surface owners should not be subjected to having their farm land taken out of cultivation as a result of geophysical surveys for unreasonable durations of time." The court did not enter judgment on the defendants' counterclaims.[1] Enron appeals.

---

1. An order denying a temporary injunction is appealable by right. Civil Appellate Procedure

Rule 1.60(c), 12 O.S.1991, ch. 15, app. 2, now

## II

■ Enron contends the trial court erred in holding that, when the surface and mineral estates have been severed, an undivided mineral interest owner cannot separately convey the right of reasonable ingress and egress upon the surface for the limited purpose of conducting geophysical exploration, without conveying the other rights comprising the mineral estate, such as the right to develop and produce the minerals. We agree.

■ It is well settled that an owner of a mineral estate which has been severed from the surface has the exclusive right of reasonable ingress and egress upon the surface for purposes of exploration, development, and production of minerals. Even if a mineral owner has executed an oil and gas lease conveying his mineral rights to another, unless the terms of a lease expressly grant the lessee the exclusive right to conduct geophysical exploration, a lessor retains a corollary right to authorize a third party to conduct such operations. *Roye Realty & Developing, Inc. v. Southern Seismic,* 1985 OK CIV APP 43, 711 P.2d 946; *Mustang Prod. Corp. v. Texaco, Inc.,* 754 F.2d 892 (10th Cir.1985). And where, as here, the undivided mineral interest is not subject to a lease, all rights comprising the mineral estate are vested in the mineral owner.

In *Hinds v. Phillips Petroleum Company,* 591 P.2d 697 (Okla.1979), the lessee executed a contract conveying to a third party purchaser the right of "free entry" upon the surface to lay and maintain lines and equipment necessary for removal of hydrocarbons. The landowner sued to recover in trespass for unauthorized use of the premises by the third party. He argued the lessee's "attempt to sever and separately convey a portion of its surface rights in the oil and gas lease was legally a nullity [a]bsent assignment of [lessee's] entire 'dominant estate' in the oil and gas lease...." *Id.* at 698. The court disagreed, noting the distinction "recognized in our law between *real estate* and an *estate in real property*." *Id.* at 699. The lease-conferred easement to use the surface, said the court, is "clearly divisible if permissibly sev-

ered [and is] separately alienable under our law" without consent of the property owner. *Id.* The court concluded: "[L]easehold interests are freely alienable under our law, either in whole or in part. An exclusive right in the nature of a profit a' prendre, if granted in gross, may be transferred in gross, either in whole or in part. Divisibility is permissible so long as the servient owner's estate does not become burdened beyond the terms of the grant." *Id.*

■ We likewise find that a mineral owner may sever and assign the surface easement for the limited purpose of conducting geophysical exploration. The trial court erred in holding to the contrary, and in holding permission of the surface owner is required "to allow geophysical exploration of minerals ... unless the grant of minerals excludes said right." We have examined the "seismograph permit[s]" executed by the mineral owners in favor of Enron, and "it is clear that alienation of separately severed lease-conferred interests was clearly within the parties' contemplation." *Id.* at 700. *See also Roye Realty & Developing, Inc. v. Southern Seismic, supra; Mustang Prod. Corp. v. Texaco, Inc., supra.*

We hold the permits in question validly transfer to Enron the right of ingress and egress upon the surface of the defendants' land for the limited purpose of conducting geophysical exploration thereon.

## III

■ The defendants argue that if such a conveyance is permissible, the "permission of all fractional minerals owners is necessary to conduct seismic exploration." We disagree.

■ When a mineral estate is divided among more than one owner without reservation, the undivided interest owners become tenants in common, and each "may enter upon the premises for the purpose of exploring for oil and gas and may drill and develop the premises [but not] to the exclusion of the other...." *Earp v. Mid–Continent Petroleum Corp.,* 167 Okla. 86, 89, 27 P.2d 855, 858 (1933). As we have seen, a mineral owner

has the right to enter the servient estate for exploration purposes, and may sever that right and assign it to a third party. "While, as tenants in common, each has an undivided interest in the oil and gas under every part of the land, still each has a separate and distinct right to enter and develop his portion when not to the exclusion of the other cotenants, and one has no more interest in the right of the other to develop than a stranger. It follows that when one assigns his right to develop the others have no interest in his efforts to cancel the assignment." *Knox v. Freeman* 182 Okla. 528, 531, 78 P.2d 680, 682 (1938).

We hold that joinder of the other interest owners is not required to effectively transfer the rights of an individual owner of an undivided interest in a mineral estate. The defendants' argument is without merit.

### IV

Finally, Enron contends the trial court erred in finding that Enron failed to prove its allegation it would suffer immediate and irreparable harm if an injunction is not granted, and that Enron's use of the surface since May 1996 had been unreasonable. We agree.

The right to an injunction must be established with certainty, and the evidence must be clear, convincing, and satisfactory. A mere fear, apprehension, or possibility that an injury may result is insufficient. An "injunction should be denied where the evidence is such as to leave in doubt the existence of any fact necessary to authorize the issuance of the injunction." *Roye Realty & Developing, Inc., supra* at 949 (citing *Sunray Oil Co. v. Cortez Oil Co.,* 188 Okla. 690, 694, 112 P.2d 792, 796 (1941)).

As discussed above, Enron had a legal right to enter the defendants' land to conduct geophysical exploration. In the unappealed portion of the proceedings below, the trial court correctly found Enron had a legal right to conduct geophysical exploration and, implicitly found Enron had sufficiently supported its petition for an injunction. We have carefully examined the evidence, and find and hold that same evidence demonstrates irreparable harm and necessity to support issuance of a temporary injunction for the land subject to this appeal. The appealed order is reversed, and the matter is remanded with directions to the trial court to grant Enron the relief requested.

**REVERSED AND REMANDED WITH DIRECTIONS.**

TAYLOR, V.C.J., and REIF, J., concur.