## THLOCCO OIL CO. v. BAY STATE OIL & GAS CO.

No. 34072.   April 1, 1952.

Rehearing Denied July 15, 1952.

Application for Leave to File Second
Petition for Rehearing Denied
Sept. 9, 1952.

*247 P. 2d 740.*

O. C. Essman, Tulsa, and Ted Foster, Oklahoma City, for plaintiff in error.

Embry, Johnson, Crowe, Tolbert & Shelton, V. P. Crowe, and John A. Phillips, Oklahoma City, for defendant in error.

O'NEAL, J. The Thlocco Oil Company filed its bill in equity in the district court of Creek county, Oklahoma, in which it alleged it was the owner of an undivided one-half interest in a certain leasehold estate upon which were producing oil and gas wells, oil field equipment and other personal property used in connection with the production of oil and gas; that it had for a period of twenty years operated said properties in its own behalf and in behalf of the Bay State Oil & Gas Company which owned an equal undivided interest in the oil and gas lease and properties used in the development and operation thereof. The bill further sets forth that, as the operator, plaintiff had made certain advancements and expenditures for the benefit of the joint ownership which accounts should be settled and adjusted. By appropriate prayer plaintiff prayed that upon final hearing the lease and all equipment connected therewith be partitioned equally between the joint owners thereof, and that an accounting be had and balances struck.

The Bay State Oil & Gas Company filed its response to plaintiff's bill, and in its response admitted it was the owner of an undivided one-half interest in the lease and equipment used in its development and operation; admitted there were certain unascertained sums due the plaintiff and certain credits due defendant, and prayed that the respective sums due each party be ascertained; that a partition of the leasehold estate and equipment be decreed in conformity with its response.

For convenience the parties will hereafter be referred to as their positions appeared in the lower court.

Subsequent to the filing of plaintiff's complaint, it filed its first and thereafter its second amended complaints. These amendments were directed to the accounting feature of the original complaint only.

Upon the joining of the issues, as outlined, hearing was had before the trial court without a jury. The hearing was conducted during the months of June and July, 1948. As the respective parties

each prayed for a partition of the properties, the contest was limited on the accounting feature of the case. It became apparent, during the trial, that appraisers should be appointed to inventory and make an appraisement of the value of the properties. Upon seasonable application therefor, appraisers were appointed by the court, and their inventory and valuations was filed with the court. On October 5, 1948, the court made very extensive findings of fact and conclusions of law as disclosed by the rendition of judgment and journal entry filed for record as of said date. The decree provided for the partition of the oil properties as specifically prayed for by the respective parties. The court found that plaintiff was indebted to defendant in specified sums and that defendant was indebted to plaintiff in specified amounts, and therefore struck balances due the respective parties. As the motion for a new trial filed in behalf of plaintiff did not challenge the court's findings and judgment on the accounting feature of the case, and as no challenge is made here, either in briefs or argument, as to its validity, no further reference thereto is necessary.

On the day judgment was formalized, as shown by the journal entry, plaintiff filed with the court clerk a motion for leave to file a supplemental petition to conform to the proof. This supplemental petition was attached to plaintiff's motion. When the supplemental petition was called to the court's attention, counsel for defendant moved to strike same on the ground that plaintiff was attempting to state a new cause of action, and one not within the issues in the pending litigation or the evidence in support thereof.

In this supplemental petition to conform to the proof, plaintiff alleged that it and the defendant had entered into a binding and enforceable contract wherein defendant agreed to sell and plaintiff agreed to purchase defendant's interest in the oil properties referred to. in their respective pleadings herein.

Plaintiff sets forth in this supplemental petition the specific facts upon which it claimed a contract of sale and purchase was consummated prior to the rendition of the judgment herein. The facts pleaded are the contents of certain letters written by the defendant and addressed to the plaintiff under the following dates: September 28, 1946, November 14, 1946, and April 30, 1947, and plaintiff's reply thereto addressed to the defendant under dates of May 5, 1947, and June 10, 1947. These letters were offered in evidence over the objection of the defendant, it being defendant's contention (a) that the supplemental petition raised issues outside of the litigated issues under the pleadings of the parties, (b) that the letters show for themselves that no sale and purchase of the properties was consummated, and, at best, only disclose an effort to compromise and settle a long standing dispute over the operations affecting the properties involved. The letters, however, were admitted in evidence and will be referred to under an appropriate assignment of error raised by the defendant herein.

Plaintiff, by appropriate recitation in its petition in error supported by briefs and argument, presented several questions for review.

Plaintiff urges that a perusal of the record discloses the proceedings had before the trial court did not afford it an opportunity to fully and adequately present its evidence. The claim is based on the alleged mental and physical condition of plaintiff's counsel of record; it being asserted that plaintiff was thus prevented from presenting its case in detail in the trial court. This contention was not called to the attention of the trial judge, nor to opposing counsel, and apparently is based on the fact that plaintiff's counsel died of a heart attack several days after the case on its merits was disposed of. In view of the additional circumstance that plaintiff's president, throughout the entire trial and especially in the preparation of the case-made for appeal,

seems to have been active in the control and management of plaintiff's litigation, we are forced to the conclusion that the plaintiff was not denied any substantial right as asserted.

Plaintiff, by petition in error, asserts that:

"No man can serve two masters, for he will hate the one and love another, or else he will hold to the one and despise the other."

And plaintiff urges the application of this moral law to his asserted legal rights. The challenge is predicated on the relationship of the court's reporter and one of counsel for the defendant. It appears that Mrs. Margaret Jennings is the wife of Attorney George Jennings, and plaintiff seems to feel that per se, he will profit from the fees charged and collected by reporter Margaret Jennings. Though not supported by proof, it is asserted that the reporter incorporated a number of proceedings had in the lower court in the case-made which are unnecessary for the court's consideration, and that she failed to incorporate in the case-made proceedings claimed to have transpired in the presence of the court and in her presence which are necessary for a proper disposition of the case. That Attorney Jennings will profit by reason of fees collected by the court reporter is speculative. The record discloses that out of an abundance of precaution the president of the plaintiff company wrote a letter to the court reporter in which he requested that certain additional proceedings be incorporated in the case-made. If these proceedings are unnecessary, as asserted, their incorporation in the case-made was induced by the plaintiff's letter referred to.

An additional complaint is lodged that the case-made does not disclose proceedings had in the presence of the court and court reporter which plaintiff asserts would show that discussions between plaintiff's president and counsel and defendant's counsel, if incorporated in the case-made, the issue raised in plaintiff's supplemental petition to conform to the proof would corroborate and sustain plaintiff's contention that it had purchased defendant's interest in the oil properties. These alleged proceedings were reduced to writing by the president of the plaintiff company and accompanied a request that they be incorporated as an amendment to the case-made. On seasonable objections being raised by counsel for the defendant, and after a full hearing by the trial judge, he disposed of the matter, employing the following language:

"What's delineated here just didn't happen in the course of the trial of the case, unless there appears some quotations from the record already made. Those discussions didn't reach the court's ear, nor the court reporter's, if they occurred, and shouldn't be made a part of the record."

After the case-made was lodged in this court, plaintiff renewed its contention that the court reporter had failed and neglected to furnish a full and complete case-made. This court on application of plaintiff permitted withdrawal of case-made for presentation to the trial judge for amendment.

The trial judge having died, the hearing on the application for amendment of the case-made was heard by the trial judge's successor in office. That a full hearing was had is apparent from a perusal of the evidence presented, at the conclusion of which hearing the court denied plaintiff's application for the inclusion of the statement submitted. Plaintiff's objection with reference to the qualification of the court reporter and her competency to act as such, is settled by 20 O. S. 1941 §107, which generally provides that the district judge shall appoint a reporter skilled in stenography and competent to perform the duties required of him. Plaintiff did not complain in the lower court that the court reporter was incompetent under the quoted statute, but for the first time raises in this court the question of the relationship of the court reporter with one of coun-

sel for the defendant. It will be noted that plaintiff's contention is that it is entitled to a reversal of the judgment because it has not been furnished a complete transcript of all the proceedings had in the course of the trial and, being without fault, is entitled to a new trial. Plaintiff relies on Cherry v. Brown, 79 Okla. 215, 192 P. 227. The principle there announced is to the effect that a party who is unable to procure from the court reporter a full transcript of all the evidence and proceedings is presumptively entitled to a new trial. In the instant case, two judges, after full hearings, held that plaintiff was furnished a complete transcript of all the evidence and proceedings had in the trial court, and with this conclusion we concur.

Though not raised by motion for a new trial or by petition in error, the plaintiff in its brief and argument suggests that the approving and confirming of the commissioners' report as to the value of the properties is in excess of the amount the leasehold and equipment could reasonably be sold for, and therefore the commissioners' report and its approval are erroneous, requiring a reversal of the cause. Our view is that the order of the court approving the commissioners' inventory and appraisal is not a final order but, at most, is advisory only. This is a proceeding in equity and the commissioners do not have the statutory power granted them in a proceeding involving the partition of real property. We so held in Clark v. Mercer Oil Co. (1929) 139 Okla. 48, 281 P. 283. No showing was made in the trial court that the commissioners' report in any manner affected the substantial rights of the plaintiff. We hold that the report of the commissioners is advisory only.

The pivotal point on which this case rests is advanced under plaintiff's assignments of error, in which it states:

"In a proceeding in equity it was within the trial court's jurisdiction and it was the court's duty to hear and consider all of the evidence and to determine all issues properly raised by the evidence whether specifically raised in the proceedings or not."

A brief resume of the proceedings in the trial court is necessary to a full understanding of the contention here advanced. The original complaint, filed on August 22, 1945, and the two amendments thereto stated a single cause of action, that is, for a partition of the leasehold estate, a division of the physical properties connected therewith and for an accounting. On these issues, upon a hearing held in June and July, 1948, the lower court entered its decree of partition as prayed for by both plaintiff and defendant. No other proceedings necessary for consideration were had until October 5, 1948, upon which day plaintiff filed with the court clerk its motion for leave to file a supplemental petition to conform to the proof and evidence theretofore submitted. Over defendant's objection the court permitted the amendment to remain as a part of the record. During the progress of the case plaintiff offered to the court reporter certain letters which according to the exhibits in the case-made, indicate they were offered in evidence as of July 21, 1948, this being the last day of the hearing before the trial court upon the issues of partition and accounting. As stated, the supplemental petition to conform to the proof which was not filed until October, 5, 1948, in substance, stated that since plaintiff had filed its original petition and the two amendments thereto, the relationships of the parties have been changed in that under date of September 28, 1946, November 14, 1946, and April 30, 1947, defendant offered to sell its interest in the leasehold estate and equipment, and that as shown by the letters dated May 5 and June 10, 1947, plaintiff accepted defendant's offer and agreed to and did purchase defendant's interest in said properties, and, therefore, the court lost jurisdiction to partition the properties as prayed for by the parties' original pleadings. As these letters constitute the only evidence in support of plain-

tiff's supplemental petition, they, or pertinent parts thereof, are set out in chronological order.

The letter of September 28, 1946, written by the defendant to the plaintiff, is as follows:

"Bay State Oil & Gas Company, as you know, would like to attempt to negotiate settlement of the differences between Thlocco Oil Company and Nabob Oil & Gas Company, on the one side, and Bay State Oil & Gas Company, including the cases now pending in the District Court of Creek County, Oklahoma. We have in mind the thought that sitting across the table from each other we could probably save considerable time and expense, which could be more fittingly used on other work. It is our desire to sell or separate the properties, or divide them between the companies so that there may be a complete divorcement of ownership in all of the presently jointly owned properties."

The letter of November 14, 1946, written by the defendant to the plaintiff, is as follows:

"My Company will give you $14,500.00 for your undivided one-half interest, free and clear of all liens, in the Thlocco lease, legally described as

the Northwest Quarter of Section Nine, Township 18, Range 7 East, Creek County, Oklahoma,

including the buildings and all equipment, as well as any other jointly owned property.

"Or my Company will accept from you a like sum for its one-half interest in the working interest in Thlocco lease, on the same basis, including the buildings and all equipment, as well as any other jointly owned property."

On the same date, November 14, 1946, the president of the Bay State Oil & Gas Company addressed a letter to the president of the Thlocco Oil Company which, insofar as pertinent, reads:

"Enclosed herewith you will find a letter addressed to The Thlocco Oil Company submitting a buy or sell proposition on all of our jointly owned properties, and a similar letter addressed to Nabob Oil Company on all of our jointly owned properties.

"These offers are submitted to you in good faith, and with the hope that as a result we may in part compromise the differences and separate the ownership, so that the partnership in all properties now existing may be terminated, and the pending partition suit be dismissed."

The three preceding letters were not replied to by the Thlocco Oil Company, and to urge a reply, the Bay State Oil & Gas Company, under date of April 30, 1947, addressed a letter to Mr. Owens, the president of Thlocco Oil Company; the pertinent points thereof are as follows:

"It has been a long time now since I have approached you in reference to the settlement of our disputes and the sale of our jointly owned properties.

"The increase in the price of crude which came since we talked before and the possibility of another increase makes it seem to us an ideal time to sell not only the Thlocco but the Olive interests. We understand that premiums are being offered for connections at this time in both areas.

"We have been approached on the idea of selling our half interest in both properties but, of course, before treating these things seriously I have felt that you should have another opportunity to take over our interests in either or both of the properties on the basis of the offers which we made to you last fall.

"I have always felt that you ought to have our half interest in the working interest in the Thlocco lease because of your ownership of the base royalty, as well as the other half of the working interest. It would give you the opportunity to own the whole property with only a 10% royalty and I know that would be distinctly advantageous to you.

"We would like to get all of our joint affairs settled, get the law suits out of

the way, dispose of all our jointly owned properties and get away from the entire partnership. You have repeatedly expressed the same thought to me so many times over the last ten years that I know this is your idea as well as ours.

"We are willing to repeat to you the buy or sell proposition which we made to you last fall or, if you want the Thlocco interest, we will exchange our half of the working interest in that property for your half interest in the Olive block properties, contingent on the reinspection of the Olive equipment. You realize, I am sure, that we would have in mind selling those properties immediately and not operate them since the operation cannot be profitable for us.

"* * *

"It seems to me, too, that it should be the ideal time for you to clean up your partnership with us and have everything in which you are interested in shape so that it will be yours to do with as you please, without consulting with anyone.

"* * *

"I shall appreciate it very much if you will give this your earnest consideration and let me hear from you in the not too distant future."

The first response to the previous letters of the Bay State Oil & Gas Company was a reply written by the Thlocco Oil Company under date of May 5, 1947, which stated:

"In last Friday's mail your letter addressed to Mr. Owens was received. He intended to be in the office over the weekend but was delayed so I thought it best to write you explaining why you have not received an answer.

· "Mr. Owens was forced to stay at the Milfay properties over the weekend and then leave for Oklahoma City. He plans now to get back to the office on the 10th instant."

The only other letter of the plaintiff, in response to defendant's letters referred to, was the letter of June 10, 1947, written by the Thlocco Company to the Bay State Oil & Gas Company, in which it is stated:

"* * * At that time I called to his attention (referring to Mr. Owens, President of the Thlocco Oil Company) your letter of April 30th about Thlocco and Nabob buying your interest in the jointly owned leases. He stated he would try to work out a deal with you in order to get the matter behind him and instructed me to work up a statement, to June 1st, of the accounts between your company and Thlocco and Nabob so that everything could be settled and closed at one meeting and indicated he would try to get to the matter on or before June 1st. However, he has been busier than usual completing, drilling or starting eight wells for Nabob offsetting producing or drilling wells of adjacent lease owners and has not been to the office during office hours since I wrote you about a month ago."

As our views run parallel with the court's findings of fact and conclusions of law with reference to this issue, we quote from the journal entry:

"Thereupon, the court, having considered the allegations of said amended petition, to the effect that plaintiff had purchased the leasehold estate and equipment situated thereon from the defendant herein, and having considered the evidence offered over the objection of the defendant at the trial of this cause relating to such claims, and on consideration thereof, the Court finds:

"That plaintiff and defendant at no time entered into any agreement by which plaintiff purchased or agreed to purchase said leasehold estate, or any equipment located thereon from the defendant, and finds that defendant proposed to plaintiff a compromise and settlement of their controversy, but plaintiff declined to accept the same, and that there was never a meeting of the minds of the parties hereto on such proposed compromise of sale of said property, and the Court finds against plaintiff generally on the issues raised in said amended petition."

We think the ruling of the trial court in this respect must be sustained under the rule of equity which provides

that the court will not permit one person will full knowledge of the facts as to the fluctuating value of oil and gas properties to delay, as in this instance, a period of two years before electing to accept an offer made by another to sell its interest in the oil properties, when from the evidence it is shown the offer to sell was based on the seller's valuation of his interest on a basis of $15,000, and that the commissioners' report, as shown by the record, found that the defendant's interest was reasonably worth the sum of $67,500. We think this principle is well settled by the authorities. The Twin-Lick Oil Co. of West Virginia v. William Marbury, 91 U. S. 587, 23 L. Ed. 328. And by this court's decision in Thompson v. Johnson-Kemnitz Drilling Co., 193 Okla. 507, 145 P. 2d 422; Parker et ux. v. Ryan, 143 Okla. 187, 287 P. 1006.

It is our opinion that the trial court considered all the evidence and determined all the issues properly raised by the evidence, though, at the time, plaintiff had not formally presented its supplemental petition to conform to its proof.

Defendant contends that the court was not required during the closing days of the hearing in July, 1948, to consider the issue of specific performance, notwithstanding the letters above referred to were a part of the record. This for the reason that the specific performance allegation was not then within the issues as disclosed by the pleadings. We agree in the defendant's contention based upon the construction this court has given 12 O. S. 1941 §317, which deals with a court's power to permit amendments to pleadings. This statute provides:

"The court, may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; and when any proceeding fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made conformable thereto by amendment."

This statute has been construed a number of times. In Turner v. Pitts, County Treasurer, 162 Okla. 246, 19 P. 2d 563, we held:

"Allowance of amendments of pleadings after trial has commenced is in the sound discretion of the trial court, and ordinarily are allowed when timely request is made and it appears that justice will be furthered thereby, but such amendments may not be allowed when they change substantially the claim or defense."

In Combs v. Gough, 147 Okla. 40, 294 P. 165, we held:

"It is reversible error to permit, after the evidence is in, an amendment to plaintiff's petition so as to change substantially his claim and the defense thereto."

Citing in support Jones v. Exchange National Bank, 124 Okla. 5, 253 P. 49. We think the trial court should have sustained defendant's objection to the filing of plaintiff's supplemental petition to conform to the proof, but the error is harmless for the reason that upon hearing on the specific issue thus raised, the court decided the issue adversely to the plaintiff's contention made. In this respect we have fully considered the trial court's findings and conclusions of law, with which we fully agree, and therefore hold that the judgment of the trial court decreeing partition of the properties involved should be and it is hereby affirmed.

HALLEY, V. C. J., and CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur. WELCH, J., dissents.