**PARKER et ux. v. RYAN.**

No. 18803. Opinion Filed April 29, 1930.

Rehearing Denied May 20, 1930.

A. M. Fowler, for plaintiffs in error.

Pryor & Stokes, for defendant in error.

HEFNER, J. W. J. Ryan, the defendant in error herein, as plaintiff, brought this suit against Ed Parker and Mary Parker, plaintiffs in error herein, as defendants, in the district court of Seminole county for specific performance of a contract relating to mineral rights and royalties in an undivided five acres of land in the east 40 acres of lot 8, section 22, township 8 north, range 8 east.

The petition alleges, in substance, that on or about the 9th day of February, 1923, plaintiff and defendants entered into a written contract for the purchase and sale of an undivided one-eighth interest in and to the oil, gas, and mineral royalties in and under the 40 acres of land above described. The defendants, as a defense, pleaded that the contract of purchase, by its terms, provided for its performance immediately upon the final termination of certain litigation involving the lands in controversy that was then pending, wherein the defendants were plaintiffs and M. L. Yantis and B. D. Lack were defendants; that said litigation was finally terminated on the 27th day of June, 1925, at which time the mandate of the Supreme Court was spread of record in the office of the court clerk of Seminole county, and the judgment of the Supreme Court, affirming the judgment of the trial court, became final; that on or about the 1st day of September, 1925, the defendants tendered to said plaintiff full and complete performance of the contract on their part and offered to convey to plaintiff the one-eighth interest and demanded that plaintiff pay defendants the sum of $500, as provided for in the contract. It was further alleged that the plaintiff refused to pay the sum of $500, and on account of his laches and his failure to comply with the contract the contract was abandoned by the plaintiff, and for that reason the plaintiff was not entitled to specific performance.

The case was tried in the court without the intervention of a jury, and the court found the issues against the defendants and in favor of the plaintiff and ordered specific performance of the contract.

If the plaintiff was not guilty of laches, he is entitled to specific performance. If he was guilty of laches, then he, of course, is

not entitled to specific performance. We think the facts in this case present this question for our determination.

The contract was entered into on the 9th day of April, 1923. At that time the case of Yantis v. Parker, 110 Okla. 195, 237 Pac. 127, involving this same land, was pending. The defendants in this case were the plaintiffs in that case, but the plaintiff herein was not a party to that suit. The contract which the plaintiff is seeking to have specifically performed herein is as follows:

"This contract, made and entered into this 9th day of April, 1923, by and between W. J. Ryan, party of the first part, and Ed Parker and Mary Parker, his wife, parties of the second part;

"Witnesseth, that it is hereby mutually agreed by and between the parties hereto, that, whereas there is now litigation pending in the district court of Seminole county, Oklahoma, between the parties of the second part, as plaintiffs, and M. L. Yantis and B. D. Lack, as defendants, and whereas the parties of the first part also claim an interest in the lands and royalties in controversy and expects to intervene in said litigation asserting said claims.

"Now, therefore, it is agreed that if the party of the first part shall prevail in said litigation, he will immediately upon the close of said suit, transfer to the party of the second part an undivided one-eighth interest in the oil, gas and mineral royalties in the land in controversy, and also pay to the parties of the second part the sum of $500. In the event the parties of the second part prevail in said litigation, they agree to immediately upon the close of said litigation and the payment to them of the sum of $500, convey to the party of the first part an undivided one-eighth interest in the oil, gas and mineral royalties in said lands. Said lands above referred to being situated in Seminole county, Okla., and being described as follows, to wit:

"The east 40 acres of lot 8 of section 32 in township 8 north, range 8 east."

The contract specifically provides that if the parties of the second part (the defendants herein) prevailed in said litigation, they would immediately upon the close of said litigation and the payment to them of the sum of $500, convey to party of the first part (the plaintiff herein) an undivided one-eighth interest in the oil, gas, and mineral royalties in the lands. The contract therefore provided that it should be performed immediately upon the close of the litigation in the Yantis suit. The judgment in the Yantis suit became final on the 27th day of June, 1925. The Parkers, the defendants in this suit, prevailed in that suit. It there-

fore became their duty to immediately make the conveyance to the plaintiff. Ed Parker testified that he offered to make the conveyance and that the plaintiff refused to perform his part of the contract. This, however, is denied by the plaintiff, but the plaintiff does not testify that he ever made any demand on the defendants to perform the contract. He does testify that he requested A. M. Fowler, the attorney for the Parkers in the Yantis suit, to procure the deed from the Parkers and that he was ready and willing to perform his part of the contract. Fowler denies this conversation, and the record does not show that Fowler ever requested or made any demand upon the Parkers to execute the deed. Neither are the facts sufficient to show that Fowler was such an agent of the Parkers that a demand on him was a sufficient demand on the Parkers for the deed. No demand was actually made on the Parkers until in January, 1926, when a demand was made on them and the $500 was tendered to them. This was about seven months after the Yantis suit had been terminated, and shortly after a well producing 5,000 barrels of oil per day had been brought in about one-half mile from the land in controversy. A. M. Fowler, one of the witnesses in the case, testified in part as follows:

"* * * I will state further that at the time the mandate of the Supreme Court in the case of Parker against Yantis was spread of record in this case, on the 27th day of June, 1925, the oil values of this land were very uncertain and there was practically no market price for the oil royalties. There was a well which we now call the Smith discovery well, something about a half mile from this land, that was drilled to what was known as the Smith sand at 3,200 feet. or approximately that, sometime during the month of September, 1925, and when they found no oil in the Smith sand, the values depreciated more and it was only when the Smith well reached the 4,100 feet depth sand—4,100 feet deep sand, as we call it, and began producing approximately 5,000 barrels of oil per day, which was on the 19th day of December, 1925, that this land had any particular value for oil."

This testimony is nowhere disputed in the record. According to it, the Smith discovery well, in September, 1925. was drilled to what was known as the Smith sand at 3,200 feet and no oil was found in it. The values depreciated, and it was only when the Smith well reached a depth of 4,100 feet. where production was found in approximately the amount of 5,000 barrels per day. that this land had any particular value for oil purposes. This was on the 19th day of Decem-

ber, 1925. In January, 1926, demand was made on the Parkers for specific performance of their contract. This was the first demand that was made on them. When they refused to perform, suit was filed to enforce the performance. Under these facts, is the plaintiff entitled to specific performance, or has he been guilty of laches?

The contract provided that performance should be had at the end of the Yantis litigation, and that was ended in June, 1925. Oil property fluctuates in value perhaps more rapidly than any other character of property. If a well is being drilled in what is known as "wildcat" territory, the property in that vicinity, as a rule, does not have any great value for oil and gas purposes until oil is discovered. With the discovery of oil the values are instantly greatly increased on such discovery. Where the property fluctuates in value so rapidly, contracts for the purchase of the same must be performed immediately upon the thing to be done being exactly ascertained. When the Yantis litigation ended, the thing to be done was the payment of $500 on the part of plaintiff, and the delivery of a conveyance to the plaintiff by the defendants. That should have been done immediately, without waiting for the property to fluctuate in value, either up or down. Neither party had a right to wait for such fluctuation. In the case of Nelson v. Hamra, 127 Okla. 141, 259 Pac. 838, this court said:

" * * * If the act is in its nature capable of being done instantly, * * * it must be performed immediately upon the thing to be done being exactly ascertained."

That was a case involving the specific performance of a contract relating to oil property.

In reference to the fluctuating value of property of this character, the Supreme Court of the United States, in the case of Twin-Lick Oil Co. v. Marbury, 91 U. S. 587-592, 23 L. Ed. 328, said:

"The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oil from wells. Property worth thousands today is worth nothing tomorrow; and that which would today sell for $1,000 as its fair value, may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit.

"While a much longer time might be allowed to assert this right in regard to real estate whose value is fixed, on which no outlay is made for improvement, and but little change in value, the class of property here considered, subject to the most rapid, frequent, and violent fluctuations in value of anything known as property, requires prompt action in all who hold an option, whether they will share its risks, or stand clear of them."

Conceding that the demand on Fowler for specific performance was a proper demand, was it sufficient to entitle plaintiff to specific performance without immediately thereafter seeking to enforce his contract? The Yantis suit was finally determined in June, 1925, and the demand for the deed on Fowler was evidently made about the 1st of July, 1925. No suit was filed and no further action whatever was taken by plaintiff until in January, 1926, which was shortly after a large well had been discovered in the vicinity of this land. Where property fluctuates in value as oil property does, both parties to a contract, with reference to specific performance, must act quickly. Neither will be permitted to delay and wait for the values to go up or down, as the case may be. Justice demands that as nearly as practicable they must act upon the conditions as they exist at the time the contract was entered into. Conceding that the plaintiff did demand the deed and the performance of the contract in July, 1925, and that the performance was refused on the part of defendants, it was the duty of plaintiff to have immediately begun his action for specific performance and to have diligently prosecuted same to final determination, and this he did not do. He could not wait several months, and, after a well had been discovered that greatly enhanced the value of the land, then be permitted to have his contract specifically enforced. Suppose the Smith well had been dry, and the defendants had waited until that was determined and then sought specific performance. Under such conditions a court of equity would not enforce it. In contracts of this character, when the thing to be done is ascertained and definitely determined, it must be done quickly. Under the facts disclosed in this record, and under the rule announced in the Nelson Case by this court, and the Twin-Lick Oil Company Case by the Supreme Court of the United States, we do not think the plaintiff is entitled to specific performance.

The judgment of the trial court is reversed, with directions to enter judgment against the plaintiff.

LESTER, V. C. J., and CLARK, CULLISON, SWINDALL, and ANDREWS, JJ., concur. RILEY, J., not participating. MASON, C. J., and HUNT, J., absent.

Note.—See "Mines and Minerals," 40 C. J. §533, p. 953, n. 25. "Specific Performance," 36 Cyc. p. 710, n. 38; p. 726, n. 96.