**Earl CHANCELLOR, Appellant,**

v.

**TENNECO OIL COMPANY, Appellee.**

No. 54340.

Supreme Court of Oklahoma.

Oct. 19, 1982.

G.L. Jidge Verity, Bay, Hamilton, Lees, Spears & Verity, Oklahoma City, for appellant.

Richard K. Books, Watson, McKenzie & Moricoli, Oklahoma City, for appellee.

BARNES, Vice Chief Justice:

This action was instituted in this court for certiorari to review a decision of the Court of Appeals, Division No. 2, reversing the decision of the District Court of Woods County which held that a pooling order by the Corporation Commission was binding on the lessee of oil and gas interests who took said lease after commencement of the pooling proceedings and where notice of the proceeding was timely given to lessee's grantor.

The facts are that Earl Chancellor, appellant, commenced his action against Tenneco Oil Company, appellee, in the District Court of Woods County, Oklahoma, to quiet title to 26⅔ mineral acres underlying the North Half of the North Half of Section 21, T26N, R15W, Woods County, Oklahoma.

Chancellor acquired title to the mineral interest in question from Myrtle E. Mason, who was the record owner at the time of the proceeding before the Corporation Commission. Section 21, at that time, had already been spaced as a single 640 acre drilling and spacing unit.

On October 7, 1976, Tenneco filed its application before the Corporation Commission to force pool Section 21 after having notified all working interest owners. On the above date, Tenneco mailed a copy of its application and the notice of order referring and setting cause for hearing to Mason in care of C.W. Mann, 1030 Maple Street, Alva, Oklahoma. Mason had recorded in the County Courthouse in Woods County this address for the receipt of her mail. Also, the facts are that Mann had a power of attorney from Mason, and a stack of blank leases signed by Mason and that he had conducted most of her oil and gas lease activities in the past.

After said force pooling proceedings had been filed before the Corporation Commission and after Tenneco had mailed notice of the proceedings to Mason, Chancellor acquired a lease from Mason, dated October 9, 1976, covering the tract in question.

On October 12, 1976, Tenneco published notice of the pending hearing in Oklahoma City and on October 15, 1976, in Woods County, as required by 52 O.S.1941 § 97 and Rule 12 of the Corporation Commission's Rules of Practice. The hearing on the application before the Commission's trial examiner was held on October 26, 1976 and evidence presented by Tenneco. Because of a typographical error in the notice in Oklahoma City, incorrectly listing the range the land was located in, the proceeding was continued to November 12, 1976. Notice was republished in Oklahoma City on October 28, 1976.

On November 1, 1976, three weeks after the pooling proceeding was commenced and approximately one week after the evidentiary hearing by the Commission, Chancellor recorded his lease in Woods County. Meanwhile, Tenneco, in anticipation of the pooling order to be issued by the Commission, staked the well location in Section 21 on November 2, 1976 and restaked the location on November 6, 1976.

On November 12, 1976, the Commission issued pooling order No. 125782, and provided therein that any owner of the right to drill on the unit would be allowed to elect in writing to participate in the unit well by paying his proportionate share of well costs or receive an overriding royalty of ⅛₆ths of ⅞ths on oil and ⅛th of ⅞ths on gas, or receive a bonus of $35.00 per acre. The order further provided that any such owner, other than Tenneco, must elect which of the three elections he wanted and that such election had to be made to Tenneco within ten days of the order, which would be November 22, 1976, and that if any such election was not made within the allotted time, such owner would be deemed to have forfeited his right to participate in the unit well and "shall be entitled to the cash bonus only."

On November 25, 1976, drilling was started by Tenneco and finished as a producer on December 7, 1976.

Tenneco never received an election from either Mason or Chancellor. While the testimony of Chancellor and Tenneco's representatives are somewhat in conflict, as to the exact time, shortly after the election period had run, Tenneco received a title opinion from its attorneys showing the Chancellor lease had been taken and recorded. Tenneco, with that information showing Chancellor was claiming an interest in the tract involved, on December 7, 1976, mailed to Chancellor its check in the sum of $933.34 as payment of the cash bonus called for in the pooling order of the Commission.

On December 14, 1976, Chancellor called a land man of Tenneco and told him he wished to participate in the well. After

being told by Tenneco on that date, and a later date, that the time to have made such an election had passed, to wit: November 22, 1976, Chancellor, on May 11, 1976 commenced his quiet title suit in the District Court of Woods County.

Mason died in October, 1977, approximately one year after Tenneco's application for force pooling and some five months after Chancellor filed his cause of action. Mason, during that year of her life, never contended the Commission's acts were improper, and neither has her estate since her death.

The trial court found for Tenneco and ruled that C.W. Mann was the agent for Mason and that when Tenneco mailed a copy of the application and notice of force pooling to Mason in care of Mann on October 7, 1976, and on November 15, 1976, mailed a copy of the Commission's order to the same address, it had complied with the laws of Oklahoma and the rules of the Commission as to service of notice of its proceedings. The court further found that Tenneco had no notice of Chancellor's claim until after the time for his election and that no election was ever made by him or his grantor, Mason. From the trial court's order, Chancellor appealed and the Appellate Court, Division No. 2, in reversing the trial court, held that the pooling order obtained from the Corporation Commission was void as to Chancellor because of lack of notice to Chancellor of the proceedings.

■ We agree with the trial court and find that under the facts in this case, C.W. Mann was the agent for Mason involving her oil and gas leasing activities and that Tenneco obtained good service on the record owner, Mason, by doing all it could by mailing notice of the application and the Commission's pooling order to Mason at the address of C.W. Mann, and that Tenneco owed no duty to inform Chancellor of any part of the proceeding before the Corporation Commission.

1. (Sup.Ct. No. 53,201, October 19, 1982).

2. *Gulfstream Petroleum Corp. v. Layden,* Okl., 632 P.2d 376, 379 (1981); *State ex rel. Comm'rs*

■ Where the evidence in a case of equitable cognizance is conflicting, the trial court's findings and judgment will not be disturbed on appeal unless they are clearly against the weight of evidence. *Bailey v. Lovin,* 202 Okl. 17, 209 P.2d 994 (1949); *Tucker v. Edwards,* 376 P.2d 253 (Okl.1962); *Brown v. Greever,* 379 P.2d 689 (Okl.1963); *Kunze v. Wilkerson,* 426 P.2d 340 (Okl. 1967); *Littlefield v. Roberts,* 448 P.2d 851 (Okl.1968); and *Snow v. Winn,* 607 P.2d 678 (Okl.1980).

Upon examination of the entire record, while some portions of material proof may be in conflict, the judgment of the trial court is not against the clear weight of the evidence, nor is it contrary to the established principles of equity.

We agree with Tenneco that if the Court of Appeals order was allowed to stand it would require an applicant before the Corporation Commission who seeks to pool interests within a drilling and spacing unit to daily check county records from the day of application until the Commission's order. This was never the intent of the pooling of the statute. Also, such a holding would permit parties adverse to the pooling application to defeat it by simply transferring their property to another at or about the time the pooling hearing was held and/or to stand by and, if the well be a producer, elect to participate. Again, this was never the intent of the pooling statute.

■ *Tenneco Oil Company v. El Paso Natural Gas Company,*[1] decided this day, is entirely consistent with our pronouncement herein. Here we reaffirm a litigant's access to the district court for a declaratory judgment or equity decree clearing a title clouded by the Corporation Commission's order that is claimed to be void. A void order may be attacked collaterally.[2] In *Tenneco,* we reconfirm the Corporation Commission's power to deal with public

*of the Land Office v. Corporation Commission,* Okl., 590 P.2d 674, 677 (1979); see also *Scoufos v. Fuller,* Okl., 280 P.2d 720, 723 (1955).

rights. While a district court is doubtless authorized by law to remove a cloud which was created by a void agency order, it is powerless to construe or declare rights arising under an administrative decision of the Corporation Commission. 12 O.S.1981 § 1657.[3]

We therefore vacate the Court of Appeals opinion and reinstate the trial court's judgment.

IRWIN, C.J., and HODGES, OPALA and WILSON, JJ., concur.

HARGRAVE, J., concurs in part, dissents in part.

LAVENDER and SIMMS, JJ., concur in result.

---

**3.** The terms of 12 O.S.1981 § 1657 provide: "This act (Uniform Declaratory Judgments Act) *shall not be applicable to orders,* judgments, or decrees made by the State Industrial Court, the *Corporation Commission,* or any other administrative agency, board or commission of the State of Oklahoma". (emphasis added).