OSCN Found Document:EAGLE ENERGY PRODUCTION, L.L.C. v. THE CORPORATION COMMISSION

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 EAGLE ENERGY PRODUCTION, L.L.C. v. THE CORPORATION COMMISSION
2015 OK CIV APP 51
351 P.3d 750
Case Number: 112165
Decided: 12/05/2014
Mandate Issued: 05/20/2015
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2015 OK CIV APP 51, 351 P.3d 750

 

EAGLE ENERGY PRODUCTION, L.L.C., CLAREMONT CORPORATION, and 
POMONA PRODUCTION, L.L.C., Appellants,
v.
THE CORPORATION COMMISSION of 
the STATE of OKLAHOMA, composed of The Honorable Patrice Douglas, Chairman, The 
Honorable Bob Anthony, Vice Chairman, and The Honorable Dana L. Murphy, 
Commissioner; TOWER ROYALTY COMPANY, L.L.C.; and THISTLE ROYALTY COMPANY, 
L.L.C., Appellees.

APPEAL FROM AN ORDER OF
THE CORPORATION COMMISSION

AFFIRMED

Michael D. Stack, Oklahoma City, Oklahoma, for Appellant Eagle 
Energy,
John R. Reeves and, Matthew J. Allen, Oklahoma City, Oklahoma, for 
Appellant Claremont Corp.,
John E. Lee, III, Edmond, Oklahoma, for Appellant 
Pomona Prod.,
Robert G. Gum, Oklahoma City, Oklahoma, for Appellees, Tower 
Royalty Company, L.L.C. and Thistle Royalty Company, L.L.C.,
Robert J. 
Campbell, Jr., Oklahoma City, Oklahoma, for Appellee, The Corporation Commission 
of the State of Oklahoma,
Terry L. Stowers, Norman, Oklahoma, for Intervenor, 
Coalition of Oklahoma Surface and Mineral Owners, L.L.C.


Larry Joplin, Presiding Judge:
¶1 Appellants, Eagle Energy Production, L.L.C., Claremont Corporation and 
Pomona Production, L.L.C., seek review of an order of the Oklahoma Corporation 
Commission denying motions to reconsider the Commission's order of August 22, 
2013, in which the Commission found Appellees, Tower Royalty Co., L.L.C. and 
Thistle Royalty Co., L.L.C., are not bound by forced pooling order No. 552381, 
issued on April 8, 2008. Appellants complain the Commission erred in its 
determination that the 2008 Commission order did not effectively pool the rights 
of Tower Royalty Co. or its successor, Thistle Royalty Co.
¶2 In November 2007, Orca Resources L.L.C., the pooling applicant, filed the 
pooling application at issue in this cause, seeking to pool the drilling rights 
of the owners in the 640-acre horizontal drilling and spacing unit formed for 
the Misener-Hunton common source of supply, in Section 30, Township 15 North, 
Range 4 East of I.M., Lincoln County, Oklahoma. Tower Royalty, Appellee, owned 
mineral interests in the spacing unit for which Orca sought the pooling 
order.
¶3 On March 27, 2007, prior to Orca filing the pooling application later that 
year, Tower entered into a one-year oil and gas lease with Blackburn Properties, 
Inc. The lease covered 155.69 mineral acres within the spacing unit at issue. 
The lease provided that if drilling of a well, resulting in oil and gas 
production in paying quantities, was commenced within the primary term of the 
lease, the lease would be extended. There is no evidence in the record that oil 
and gas production commenced within the term of the lease, which might have 
extended the lease. Instead, the Tower-Blackburn lease expired on March 27, 
2008, according to the terms of the lease itself.
¶4 As Orca proceeded with the pooling application, Blackburn was listed as 
one of the respondents in the pooling proceeding, because Blackburn entered into 
the mineral lease with Tower Royalty earlier that year. Terms of the 
Tower-Blackburn lease, including the lease expiration date, were available to 
Orca during the pooling process. Prior to the expiration of its lease, Blackburn 
protested the pooling application as one of the respondents. Tower Royalty was 
never served or listed as a respondent in the pooling proceedings, although 
Appellants allege Tower had actual notice and was in collusion with Blackburn to 
impede application of the pooling order. Blackburn made no election under the 
pooling order. The pooling hearing was held on January 8, 2008 and the pooling 
order (No. 552381) was issued by the Corporation Commission on April 8, 2008, 
twelve days after the Tower-Blackburn lease expired. Special Energy, Inc. 
was named operator under the 2008 pooling order. After Special Energy acquired 
the working interests and drilling rights, Special Energy conveyed them to Eagle 
Energy Production, L.L.C., Claremont Corporation and Pomona Production, L.L.C. A 
bonus from the production was paid to Blackburn, Blackburn having been listed in 
the pooling order and having made no election. Tower was not included in the 
2008 order and was given no bonus payment under the terms of the pooling.
¶5 Appellants allege the lease between Tower and Blackburn was an attempt to 
"game" the system and avoid the pooling order. The Commission's August 22, 2013 
order makes reference to Appellants' allegations that Tower and Blackburn did 
not engage in an arm's length transaction and did not establish a fair market 
value for the lease. In fact, the Commission's 2008 order found the 
Tower-Blackburn lease was not representative of fair market value. During the 
most recent request for clarification proceedings, Appellants continued to 
assert allegations of impropriety or "not acting in good faith" on the part of 
Tower and Blackburn. Although Appellants assert the allegations of impropriety 
are not new and were brought prior to the latest proceeding, the record does not 
indicate the Commission ever made a finding of bad faith or improper conduct on 
the part of Tower or Blackburn, and there are no stipulated facts asserting 
Tower or Blackburn acted improperly.
¶6 After the pooling order was issued, Tower filed an affidavit of notice on 
September 26, 2008 in Lincoln County, asserting the Tower-Blackburn lease 
expired prior to the issuance of the pooling order and that Tower was not a 
respondent in the pooling proceedings, and therefore not subject to the pooling 
order. On July 22, 2010, Tower and Thistle[1] filed a quiet title action in Lincoln 
County against Appellants, asserting their working interests were not subject to 
the 2008 pooling order. On September 27, 2010, Eagle Energy initiated the 
current matter at the Corporation Commission, asking the Commission to determine 
that the interests of Tower and Thistle have been and remain subject to the 2008 
pooling order. The district court proceeding was thereafter stayed, pending a 
final determination by the Commission. After both an ALJ Report and an Appellate 
Referee report recommended finding that the drilling rights of Tower and Thistle 
were subject to the 2008 pooling order, the Commission en banc heard oral 
argument on June 30, 2013. The Commission issued its decision on August 22, 
2013, finding the 2008 pooling order (No. 552381) did "not pool or otherwise 
affect the rights, titles, interests or obligations of either Tower Royalty 
Company, L.L.C. or Thistle Royalty Company, L.L.C. with respect to any mineral 
interests they own" in the described section. Eagle, Claremont and Pomona filed 
motions to reconsider. Those motions were denied, resulting in the appealed from 
"Order Denying Motions to Reconsider."
¶7 Review of a challenge on appeal from an order of the Oklahoma Corporation 
Commission is outlined in Article IX, § 20 of the Oklahoma Constitution.

 
 The Supreme Court's review of appealable orders of the Corporation 
 Commission shall be judicial only, and in all appeals involving an asserted 
 violation of any right of the parties under the Constitution of the United 
 States or the Constitution of the State of Oklahoma, the Court shall 
 exercise its own independent judgment as to both the law and the facts. In 
 all other appeals from orders of the Corporation Commission the review by 
 the Supreme Court shall not extend further than to determine whether the 
 Commission has regularly pursued its authority, and whether the findings and 
 conclusions of the Commission are sustained by the law and substantial 
 evidence. Upon review, the Supreme Court shall enter judgment, either 
 affirming or reversing the order of the Commission appealed 
 from[.]
Henry v. Corporation Comm'n of the State of Oklahoma, 1990 OK 103, 825 P.2d 1262, 1266-67 
(quoting Okla. Const. art. IX, § 20). Each Appellant, Eagle Energy, 
Claremont and Pomona Production, filed separate appeals and briefing materials. 
The three related cases of Appellants, Eagle Energy v. The Corporation 
Commission, et al. (112,165), Claremont Corporation v. The Corporation 
Commission, et al. (112,166), and Pomona Production, L.L.C. v. The Corporation 
Commission, et al. (112,171), were consolidated on appeal by order of the 
Oklahoma Supreme Court, September 23, 2013. Appellants in their appellate briefs 
allege both similar propositions of error as well as separate and unique 
propositions that were not shared amongst Appellants. Appellees, Tower and 
Thistle, and the Corporation Commission responded separately to each set of the 
Appellants' briefing materials. Because the propositions of error are not 
identical across each set of filings, this single opinion will address each of 
Appellants' set of alleged errors separately.
I. Eagle Energy
¶8 Eagle asserts three propositions of error in its claim that the 
Commission's order violates its substantive due process rights. Eagle's first 
and third propositions are related. First, Eagle asserts the Commission's 
jurisdiction continued to be effective as to the mineral and drilling rights, 
even after the Tower-Blackburn lease expired and those rights reverted back to 
the owner/lessor, Tower. And second, Eagle claims the Commission's jurisdiction 
attached to the drilling rights at issue prior to the expiration of the primary 
term of Blackburn's lease, so that expiration of the lease prior to the 
effective date of the Commission's order did not obviate the effectiveness of 
the order as to Blackburn, Tower, or any other entity that may later come to the 
oil and gas rights after Blackburn. Eagle argues this is so because the 
Commission's jurisdiction attached to the drilling rights in rem without 
regard for who owned the rights at the time the order was issued. Eagle also 
claims the drilling rights were subject to the pooling order, despite the fact 
the lease expired, Tower was not named as a respondent in the proceeding, and 
Tower was not given notice as provided for by statute. 52 O.S. Supp. 2007 § 87.1(e).
¶9 The appealed from order states the primary question at issue in this case 
is "whether a pooling order binds a lessor of an oil and gas lease which expires 
prior to issuance of a pooling order." The appealed from order states the 
effective date of the 2008 order was April 8, 2008 and the Tower-Blackburn lease 
expired prior to the effective date of the 2008 order, on March 27, 2008. The 
appealed from order goes on to note that neither Tower nor Thistle was a party 
to the 2008 pooling, neither owned the right to drill or produce at the time the 
pooling was initiated, Tower and Thistle were not named in the pooling 
application, and no notice was given to Tower or Thistle. The resulting pooling 
order (No. 552381) does not name either Tower or Thistle. And the Commission 
concludes, "the Applicant (Orca) for the pooling order never perfected its right 
to force pooling relief against Tower and Thistle or their interests."
¶10 Eagle's first and third propositions of error attempt to counter the 
importance of the effective date of the order by arguing that notice to 
Blackburn, Tower's lessee, and inclusion of Blackburn in the pooling process, 
while Blackburn held the oil and gas lease, is sufficient to pool the interest 
of any Blackburn successor, even though Blackburn no longer owned the mineral 
interests when the order issued. In essence, Eagle argues because Blackburn 
owned the mineral interests at some point in the pooling process, that is enough 
to bind all who come to the mineral interests after Blackburn. To this end, 
Eagle argues the Commission's jurisdiction attached to the drilling rights in 
rem, prior to the issuance of the order. It should be noted that Commission 
orders, as per the Commission's own rules, issue and become effective on the 
date the order is signed by the Commissioners or by the Secretary upon approval 
of the Commissioners. OAC 165:5-1-6(c).[2] This means the effective date of the order was April 
8, 2008, after Blackburn was no longer lessee of the mineral interests.
¶11 Eagle goes on to argue that the effective date of the order is 
inconsequential, because forced pooling is an extended process and the pooling 
order merely represents the culmination or establishment of a plan that was 
developed during the pooling proceeding, citing Crest Res. and Exploration 
Corp. v. Corporation Comm'n of the State of Oklahoma, 1980 OK 133, 617 P.2d 215. However, Crest 
does not support Eagle's position, because it does not obviate the significance 
of the effective date of the order. It is clear from cases such as 
Kuykendall and Roberts v. Funk Exploration that the order itself 
and the effective date thereof are relevant and vital parts of the pooling 
process. And the estate created by the Tower-Blackburn lease, and Blackburn's 
interests which Orca was attempting to force pool, ceased prior to the effective 
date of the Commission's order. Ellison v. Skelly Oil Co., 1951 OK 122, 244 P.2d 832, 836.
¶12 Eagle also cites Harding & Shelton, Inc. v. Sundown Energy, 
Inc., 2006 OK CIV APP 12, 130 P.3d 776, in support of 
propositions one and three, arguing that Harding & Shelton "instructs 
that once the Commission's jurisdiction and authority attach to drilling rights 
held by a lessee in a pooling proceeding, the expiration of the attendant oil 
and gas lease does not remove those drilling rights from the Commission's 
jurisdiction and authority." (Emphasis in party's original brief in chief.) In 
Harding & Shelton, successor lessees of a previously pooled unit 
sought to re-pool the formations covered in a 1985 pooling order and to pool 
previously unpooled formations underlying the same unit, to which the appellate 
court found:

 
 The prior pooling order constitutes a final determination of the rights 
 and obligations of any present or future holders of a mineral interest in 
 the affected common source(s) of supply, because to hold otherwise would 
 cast the established rights and obligations of any holder of a mineral 
 interest in the previously pooled common source(s) into chaos every time 
 there was a change in ownership of mineral or leasehold rights in any pooled 
 formation. Applicants must be held to have obtained their lease(s) subject 
 to the terms of the prior pooling order.
Harding & Shelton, 2006 OK CIV APP 12, ¶ 13, 130 P.3d 
at 779.
¶13 Significantly for its application to this case, Harding & 
Shelton also explains that "absent proof of such a change of condition or 
knowledge of conditions, orders of the Corporation Commission affecting the 
development of common sources of supply constitute a final adjudication of the 
rights and obligations of the common source mineral interest holders, and, 
once rights become fixed under such orders, those orders are not subject 
to a later collateral attack. 52 O.S. 
§ 111; Eason Oil Co. [v. Howard Eng'g, Inc.], 1990 OK 101, ¶ 8, 801 P.2d at 
713-714." Id. at 778-79 (emphasis added). It is the "fixing" of Tower's 
rights under the 2008 order that did not occur in this case, because the pooling 
order, which was intended to be "a final determination of the rights and 
obligations of" Blackburn, did not effectively contain Blackburn because it was 
not a present holder of the mineral interest when the order issued; and the 
lease expiration meant the mineral estate reverted back to the lessor, so that 
the mineral estate the pooling applicant tried to force pool no longer existed 
when the order was entered. Ellison v. Skelly, 244 P.2d at 836; Hinds 
v. Phillips Petroleum Co., 1979 
OK 22, 591 P.2d 697, 699 (a 
lessee cannot burden the owner's estate beyond the terms of the lease grant). 
The successor lessees seeking to redo the pooling scheme in Harding & 
Shelton were successors to mineral interest owners and lessees whom the 
court determined were pooled, or whose rights became "fixed," in the earlier 
order; this is not the case with respect to Blackburn and Tower.
¶14 Eagle also cites Chancellor v. Tenneco Oil Co., 1982 OK 122, 653 P.2d 204, overruled on other 
grounds by Tenneco Oil Co. v. El Paso Natural Gas Co., 1984 OK 52, 687 P.2d 1049, 1056 n. 23, arguing 
Chancellor demonstrates that the Commission's jurisdiction attached to 
and operated on the drilling rights at the outset of the pooling process. This, 
Eagle claims, is evidenced by the Chancellor court finding that the 
drilling rights changed ownership by means of a lease entered into after the 
pooling application was filed, and the pooling order remained effective against 
the lessee. In Chancellor, the lessee acquired a lease from the owner 
after pooling proceedings had begun, after notice of the proceedings had been 
filed before the Corporation Commission, and after notice had been sent to the 
owner from which the lessee acquired his lease. Chancellor is not 
instructive under the current set of facts. In this case, the lease in question 
was entered into prior to the filing of the pooling application; the 
owner/lessor was not provided notice either before or during the pooling 
proceeding; Blackburn's lease estate which the pooling applicant was attempting 
to force pool no longer existed when the pooling order was issued.
¶15 Eagle's reliance on Harding & Shelton and Chancellor 
reveal a fundamental mistake in Eagle's argument, in that Eagle fails to make a 
distinction between the following: a) the conveyance of a leasehold estate from 
owner (lessor) of the estate to a lessee, as occurred in Chancellor, b) 
the transfer or conveyance that occurs between a lessee and the lessee's 
successor or assignee to the lease, as occurred in Harding & Shelton, 
and c) the cessation or termination of a lease that occurs between the owner and 
the lessee when the lease expires and ceases to exist, as occurred in this case. 
The estate created by the lease between Tower and Blackburn ceased to exist by 
its own terms on March 27, 2008 and full ownership of the estate was restored to 
Tower. Ellison v. Skelly, 244 P.2d at 836. The pooling applicant's 
attempt to burden the owner's (Tower) estate beyond the terms of the lease grant 
is misplaced. Hinds, 591 P.2d at 699 (a lessee cannot burden the owner's 
estate beyond the terms of the lease grant). When the lease estate ceased prior 
to the Commission's order, the pooling applicant could not bootstrap its pooling 
efforts against Blackburn and impose those efforts directly onto Tower.
¶16 Eagle's remaining proposition of error claims the pooling applicant's 
failure to name Tower as a respondent in the 2008 pooling process, failure to 
give Tower notice of the pooling application and proceedings, and failure to 
secure Tower's inclusion in the 2008 pooling order itself is not fatal to its 
position in this case. Eagle claims the notice to Blackburn was effective 
against Tower, and Tower knew of the pooling process anyway, even alleging Tower 
acted through or in conjunction with Blackburn during the pooling 
proceeding.
¶17 Title 52 O.S. Supp.2007 § 
87.1(e) provides as follows with respect to notice to be given mineral 
interest owners in the course of a forced pooling proceeding:
The applicant shall give all the owners whose addresses are known or could 
be known through the exercise of due diligence at least fifteen (15) days' 
notice by mail, return receipt requested. The applicant shall also give notice 
by one publication, at least fifteen (15) days prior to the hearing, in some 
newspaper of general circulation published in Oklahoma County, and by one 
publication, at least fifteen (15) days prior to the date of the hearing, in 
some newspaper published in the county, or in each county, if there be more than 
one, in which the lands embraced within the spacing unit are situated. The 
applicant shall file proof of publication and an affidavit of mailing with the 
Commission prior to the hearing. All orders requiring such pooling shall be 
made after notice and hearing, and shall be upon such terms and conditions 
as are just and reasonable and will afford to the owner of such tract in the 
unit the opportunity to recover or receive without unnecessary expense his just 
and fair share of the oil and gas.
52 O.S. Supp.2007 § 87.1(e) 
(emphasis added).
¶18 Section 87.1(e) makes multiple references to notice that is required to 
be given by a pooling applicant in order to obtain a pooling order upon owners' 
mineral interests in a designated pooling area: 1) "shall give all the 
owners whose addresses are known or could be known through the exercise of due 
diligence at least fifteen (15) days' notice by mail," 2) "[t]he applicant 
shall file proof of publication and an affidavit of mailing with the 
Commission prior to the hearing[,]" 3) "All orders requiring such pooling 
shall be made after notice and hearing[.]"
¶19 "The use of 'shall' by the Legislature is normally considered as a 
legislative mandate equivalent to the term 'must', requiring interpretation as a 
command." Minie v. Hudson, 1997 OK 26, 934 P.2d 1082, 1086. In fact, the 
Oklahoma Supreme Court held that a forced pooling order of the Corporation 
Commission did not successfully pool the mineral interests of certain lessors 
and their heirs who had not been given proper notice. James Energy Co. v. HCG 
Energy Corp., 1992 OK 117, 847 P.2d 333, 339-40 (mineral 
interest owners who were served only by publication were deemed not properly 
served and their interests not force pooled, because pooling applicant had the 
ability to determine the addresses of the mineral interest owners and did not 
give the required personal notice). James Energy is consistent with a 
legislative construction of the word "shall" as a command, demanding mandatory 
or imperative compliance. Furthermore, when the Corporation Commission acts in 
an adjudicative capacity, the agency is subject to due process requirements "not 
dissimilar" to those that apply to judicial bodies, including notice 
requirements. Mullins v. Ward, 1985 OK 109, 712 P.2d 55, 60.
¶20 Because the lease estate ceased to exist when the lease expired, it was 
unlike a conveyance where the estate continued and notice might be imputed to 
the party receiving the lease conveyance, as occurred in Chancellor, 653 
P.2d at 1056. Cessation of the lease and the termination of the lessee's estate 
when the lease expires does not burden the owner's (lessor) estate in the same 
way, the lessee cannot burden the owner's estate beyond the terms of the grant. 
Ellison v. Skelly, 244 P.2d at 499; Hinds v. Phillips Petroleum, 
591 P.2d at 699. For this reason, upon expiration of the Tower-Blackburn lease 
prior to the issuance of the pooling order, clean up pooling should have been 
implemented with respect to Tower, so that the "present owner" of the mineral 
interest (Tower) was included in the pooling order. The Commission found the 
lessor does not "step into the shoes of the lessee." We agree.
II. Claremont Corporation
¶21 Appellant/Claremont's first proposition of error alleges Harding & 
Shelton, Inc. v. Sundown Energy, Inc., 2006 OK CIV APP 12, 130 P.3d 776 controls in this case 
and supports Appellant's position that the Corporation Commission's jurisdiction 
attached to the Blackburn leased mineral rights in rem, so that the 
Blackburn mineral rights reverted to Tower subject to the terms of the pooling 
order. Appellant's second proposition of error asserts the Commission's 
determination that the 2008 order did not pool the mineral interests of Tower, 
and by succession Thistle, is an impermissible abdication of the Commission's 
jurisdiction and authority to force pool. Appellant's third proposition alleges 
the Commission's decision offends equity. Fourth, Appellant argues the decision 
diminishes drilling funds for the entire Oklahoma oil and gas industry. Finally, 
Appellant asserts the Commission erred in its determination that terms within 
the lease controlled, though the pooling order specifically prohibited inclusion 
and adoption of such terms.
¶22 With respect to Claremont's first proposition of error, wherein Claremont 
argues Harding & Shelton controls and applies in this case, we 
examined this issue above in the course of addressing Eagle Energy's first 
proposition of error. Similarly, we find, when the lease estate ceased prior to 
the Commission's order, the pooling applicant could not bootstrap its pooling 
efforts against Blackburn and impose those efforts directly onto Tower.
¶23 Appellant's second proposition of error alleges the Corporation 
Commission abdicated its jurisdiction and authority, to the detriment of forced 
pooling across Oklahoma. Appellant argues the Commission maintains ongoing 
authority from the outset of the pooling proceeding, and the Commission's 
decision in this case fails to acknowledge or take advantage of that continuing 
authority. Nilsen v. Ports of Call Oil Co., 1985 OK 104, 711 P.2d 98, 103. Appellant also 
argues the state's police power attached to Blackburn's drilling rights at the 
outset of the pooling proceedings, so that any contract between lessor and 
lessee does not control the pooling, if the Commission has approved an order for 
the spacing unit.
¶24 Appellant's argument here is misplaced. There is no indication in the 
record that the Corporation Commission impermissibly gave up jurisdictional 
authority at the point at which the Tower-Blackburn lease expired. The record 
indicates the pooling applicant may have had opportunities to obtain an order 
that included Tower, including requesting an extension to conduct clean-up 
pooling, such clean-up may have then allowed the applicant to give Tower notice 
under the terms of the statute, 52 
O.S. Supp.2007 §87.1(e). Failure to pool Tower's mineral interests in the 
April 2008 order did not result from an impermissible abdication of authority on 
the part of the Corporation Commission, but was rather an oversight of those 
seeking the forced pooling.
¶25 Appellant's third proposition of error alleges the Commission's order 
offends equity. Appellant alleges in its brief in chief that the Commission's 
decision finding Tower's interests were not pooled by the April 2008 order will 
result in "chaos" and would allow Tower and Thistle to be rewarded for "years" 
of silence, taking "an unreasonable period of time coming forth to assert 
ownership rights[.]" Thompson v. Johnson-Kemnitz Drilling Co., 1943 OK 316, 145 P.2d 422, 425.[3]
¶26 In support of its equity claim, Appellant cites Thompson v. 
Johnson-Kemnitz Drilling and McClain v. Ricks Exploration Co., 1994 OK CIV APP 76, 894 P.2d 422, 431. In 
McClain, lessors sought to have their leases cancelled and the mineral 
interest ownerships be deemed to belong to the lessors and not the lessees. The 
court found the lessors waited too long to speak up to assert their alleged 
ownership. Id. at 431.[4] The lessors in McClain waited over a year to 
assert their alleged ownership, with one of the lessors asserting participation 
in the profitable well a year after the well was started and over two years 
after the start of the first, less profitable, well. Id. at 430. The 
Thompson court reached a similar conclusion, upon a delay of almost a 
decade in the defendant lessees being brought into the litigation.
 
¶27 Appellant claims Tower remained silent "for years" in order to avoid the 
pooling order. However, this characterization is not supported by the record. 
Tower and Blackburn entered into the lease agreement months before the pooling 
application was filed and the terms of the Tower-Blackburn lease, including the 
lease expiration date, were completely available to the pooling applicant during 
the entire pooling process. And Tower filed an affidavit of notice in September 
2008, only five months after the April 2008 Commission order, in which Tower 
asserted it was not a respondent to the pooling proceeding and was not subject 
to the pooling order. Production of the unit well began in August 2008, seven 
weeks prior to Tower filing its affidavit of notice. Appellant's allegation that 
Tower held back for an unreasonable "two years," while the operator assumed all 
the risks of drilling, is not an accurate presentation of the record and 
McClain and Thompson are not analogous to this case.
¶28 Appellant's fourth proposition of error alleges the Commission's decision 
will diminish drilling funds for the entire industry in Oklahoma, citing 
Anson Corp. v. Corporation Comm'n of the State of Oklahoma, 1992 OK CIV APP 37, 839 P.2d 676, 680.[5] This is an extension of 
Appellant's equity argument, asserting Tower manipulated the pooling process so 
as to await the profits and then seek to assert its ownership outside the 
pooling order once profits were assured. As stated previously, Claremont has not 
supported its allegations of an unreasonable delay on the part of Tower with the 
record provided.
¶29 Appellant's final proposition of error alleges the Commission erred in 
permitting terms of the Tower-Blackburn lease to control, though the pooling 
order prohibited inclusion or adoption of the lease terms. Appellant's argument 
in this respect claims Blackburn's lease was perpetuated by commencement of the 
initial well, which did not begin until after the lease expired. The language 
Claremont relies on is as follows:

 
 SPECIAL PROVISION: The Commission finds that the Oil and Gas Lease 
 by and between Tower Royalty Company, LLC and Blackburn Properties, Inc., 
 dated the 27th day of March, 2007, covering approximately 157 mineral acres 
 in the Southwest Quarter of Section 30, Township 15 North, Range 4 East, 
 Lincoln County, Oklahoma, did not constitute an arm's length transaction and 
 that this pooling order shall be issued denying the (1) inclusion of the Oil 
 and Gas Lease Provisions as found in said lease; (2) the no cash bonus with 
 an (sic) 1/4 total excess royalty alternative for the rights in lieu of 
 participation; and (3) the option to establish a $1.00 per acre bonus 
 consideration in return for the delivery of a 75% net revenue 
 interest.
¶30 The record reveals the Corporation Commission included the "special 
provision" to address the fact that the Tower-Blackburn lease was not an arm's 
length transaction, and the lack of arm's length dealing is specifically stated 
within the special provision itself. There is nothing in the 2008 order or the 
special provision that supports Appellant's argument that the habendum clause or 
the commencement of operations provisions of the lease were disavowed by the 
April 2008 order. For this reason, the commencement of operations after the 
lease expired did nothing to perpetuate the lease term and the lease expired on 
March 27, 2008, as the parties so stipulated.[6]
¶31 Appellant argues any reevaluation of the meaning of this clause is 
prohibited as a collateral attack on the 2008 order. However, the Corporation 
Commission may clarify a prior order, which was the nature of Appellant's 
request when the current matter was removed to the Corporation Commission in 
2010, after Tower and Thistle filed their quiet title action in Lincoln County. 
Kaneb Prod. Co. v. GHK Exploration Co., 1989 OK 11, 769 P.2d 1388, 1391 ("The 
Corporation Commission may clarify or supplement its orders but it may not 
collaterally attack a prior Commission order."). Claremont has provided no 
authority, and we have found none, in support of the proposition that the 
Commission order revived and then perpetuated a lease that expired prior to the 
issuance of the Commission's order. No relief is warranted upon this proposition 
of error.
 
III. Pomona Production, L.L.C.
¶32 Appellant/Pomona asserts three propositions of error on appeal. First, 
Appellant alleges the jurisdiction of the Corporation Commission attached to the 
working interests when Orca, the pooling applicant, first obtained service on 
Blackburn and the date of the pooling order is not fatal to pooling Tower's 
interests, because Blackburn was the lessee when proceedings began. Appellant's 
second proposition of error alleges Tower and Thistle's claims are an 
impermissible collateral attack on the Commission's 2008 order, depriving Pomona 
and others of vested property rights. Finally, Appellant argues it was error for 
the Commission to find the Tower-Blackburn lease expired on March 27, 2008.
¶33 Appellant argues in its first proposition that Chancellor v. Tenneco 
Oil, Inc. and Harding & Shelton, Inc. v. Sundown Energy, Inc., 
demonstrate the Corporation Commission's jurisdiction over the working interests 
in the spacing unit attached at the beginning of the pooling process and not at 
the point of the order. With respect to Tower and Blackburn, this argument 
depends on the supposition that Tower holds the same interest Blackburn held 
during the term of the lease, which is not the case, because the leasehold 
interest Blackburn held when it was served for the pooling proceeding was not 
transferred to Tower, but rather ceased to exist when the lease expired. 
Ellison v. Skelly Oil Co., 1951 OK 122, 244 P.2d 832, 836; Hinds v. 
Phillips Petroleum Co., 1979 OK 
22, 591 P.2d 697, 699. This 
proposition relies on the same authority Eagle Energy cites in support of its 
first proposition of error. Having addressed these arguments in examining Eagle 
Energy's appeal, we reach the same conclusion here; when the lease estate ceased 
prior to the Commission's order, the pooling applicant could not bootstrap its 
pooling efforts against Blackburn and impose those efforts directly onto 
Tower.
¶34 Pomona's second proposition of error argues it held vested property 
rights as a result of the April 2008 pooling order and those rights cannot be 
upended by an impermissible collateral attack on the Commission's order. 52 O.S. § 111.[7] This argument accuses the 
Commission of modifying or changing its 2008 pooling order in a manner 
prohibited by § 111 and caselaw. Union Texas Petroleum v. Corporation Comm'n 
of the State of Oklahoma, 1981 OK 
86, 651 P.2d 652, 659. 
However, Appellant requested the Commission clarify its 2008 pooling order after 
Tower and Thistle's quiet title action was filed, to clarify whether Blackburn's 
interest, and then Tower's interest, in the spacing unit was pooled by the April 
8, 2008 order. Pomona's attempt to now argue the Commission's order is an 
impermissible modification simply because the order was not clarified in the 
manner Pomona sought is without merit. In answering Appellant's question, the 
Commission acted within its authority to clarify the 2008 order.
¶35 Appellant's final proposition of error alleges the Tower-Blackburn lease 
did not expire on March 27, 2008, prior to the issuance of the Commission's 
order and correspondingly, the Blackburn leasehold interest was a present and 
ongoing concern when the order issued, making it valid as to Blackburn and any 
entity that comes after Blackburn. In support of this proposition, Pomona 
asserts Special Energy commenced well operations in December 2007 and mechanical 
problems intervened preventing actual drilling operations prior to the March 27, 
2008 expiration of the lease.
¶36 This proposition is without merit. Pomona stipulated to the fact the 
Tower-Blackburn lease expired on March 27, 2008 and there was no rig actually 
drilling or capable of drilling the unit well at the time the lease expired. 
Stipulations are solemn admissions and a party to the stipulation is not 
relieved of the stipulation lightly. Bonner v. Oklahoma Rock Corp., 1993 OK 131, 863 P.2d 1176, 1181 n. 15 
("Stipulations are solemn admissions. Unless a court, upon request, finds a 
tenable legal ground for relieving one from the legal effect of a stipulation, 
such judicial admissions are generally binding and conclusive on the parties as 
well as on the court.").
¶37 Pomona also argues the pooling order vitiates the commence production and 
habendum clauses contained in the Tower-Blackburn lease. The record does not 
support this position. The provision Pomona claims denies inclusion of the 
Tower-Blackburn lease terms was addressed to the issue of fair market value and 
did not repudiate the entire lease. The lease provision requiring a drilling rig 
both capable of drilling and actually drilling in order to extend the primary 
term of the lease was not repudiated by the pooling order. Further, Appellant 
has cited no authority for the proposition that a Commission order issued after 
the expiration of a lease can reach into the past and extend the term of the 
already expired leasehold estate.
¶38 The order of the Oklahoma Corporation Commission, denying Appellants' 
motions to reconsider the Commission's finding that "Pooling order No. 552381 
entered by the Commission on April 8, 2008, does not pool or otherwise affect 
the rights, titles, interests or obligations of either Tower Royalty Company, 
L.L.C. or Thistle Royalty Company, L.L.C. with respect to any mineral interests 
they own" in the disputed pooling area, is AFFIRMED.

HETHERINGTON, V.C.J., and BUETTNER, J., concur.

FOOTNOTES

[1] Thistle 
is successor to an undivided portion of Tower's interest, having later acquired 
an undivided portion of the mineral interest that had once been leased to 
Blackburn.

[2] The 
order itself could give another effective date, if so stated in the order, but 
the April 8, 2008 order at issue had no such provision. See Kuykendall v. 
Corporation Comm'n of the State of Oklahoma, 1979 OK CIV APP 74, 597 P.2d 1221, 1223. Any attempt to 
establish an alternative date must be supported by substantial evidence. 
Roberts v. Funk Exploration, Inc., 1988 OK 66, 764 P.2d 147, 148.

[3] "Equity 
will not aid a party who, with full knowledge of the facts, and without risk to 
himself, stands by an unreasonable length of time and sees another assume all 
the risks in an uncertain venture in which said party might have shared, and, 
after success of the venture, seeks to share in the benefits thereof. That rule 
applies as between parties entitled to share in the production of oil. Parker 
v. Ryan, 143 Okl. 187, 287 P. 1006, 1008. When considering 
a similar claim the court in the latter case held: 'The injustice, therefore, is 
obvious, of permitting one holding the right to assert an ownership in such 
property to voluntarily await the event, and then decide, when the danger which 
is over has been at the risk of another, to come in and share the profit.'"
Thompson, 145 P.2d at 425.

[4] 
"Plaintiffs are estopped to have their leases cancelled. Similar to the facts in 
Thompson v. Johnson-Kemnitz Drilling Co., 193 Okla. 507, 145 P.2d 422 (1943), Plaintiffs knew 
of the drilling of the Elliott well, witnessed production and sale of the gas, 
and never made demand on the operator for release of their leases. Nor is there 
evidence Plaintiffs offered to pay their proportionate part of the drilling 
costs of the Elliott to the operator. Instead, they sat back and allowed 
Sanguine and Ricks to take all the risks on the Elliott and after the venture 
proved profitable, asserted a working interest in the well. As stated in 
Thompson, Plaintiffs have waited too long. They were under a duty to 
speak within a reasonable time."
McClain, 894 P.2d at 431.

[5] "Due to 
the inherently risky nature of oil and gas exploration, coupled with the great 
need for advance funding, incentives must be provided to investors and mineral 
owners. The interests of those individuals who play by the rules are 
detrimentally affected when other parties are allowed to manipulate the law to 
achieve a greater return with no risk. The long term effect could be a greater 
reluctance on the part of honest investors to participate in drilling funds and 
a larger number of lessors who always elect to take the bonus. The only 
remaining investors would be the "sophisticated" ones who find ways to 
circumvent the pooling order. The Commission's Order thus has the long term 
effect of diminishing drilling funds for the entire industry."
Anson, 839 P.2d at 680.

[6] 
Claremont Corporation stipulated to the fact the lease expired on March 27, 
2008. Bonner v. Oklahoma Rock Corp., 1993 OK 131, 863 P.2d 1176, 1181 n.15 
("Stipulations are solemn admissions. Unless a court, upon request, finds a 
tenable legal ground for relieving one from the legal effect of a stipulation, 
such judicial admissions are generally binding and conclusive on the parties as 
well as on the court.").

[7] 52 O.S. § 111:
No collateral attack shall be allowed upon orders, rules and regulations of 
the Commission made hereunder, but the sole method of reviewing such orders and 
inquiring into and determining their validity, justness, reasonableness or 
correctness shall be by appeal from such orders, rules or regulations to the 
Supreme Court. On appeal every such order, rule or regulation shall be regarded 
as prima facie, valid, reasonable and just. No court of this state except the 
Supreme Court, and if only on appeal, as herein provided, shall have 
jurisdiction to review, reverse, annul, modify or correct any order, rule, or 
regulation of the Commission within the general scope of its authority herein or 
to enjoin, restrain or suspend execution or operation thereof, provided that 
writs of mandamus and prohibition shall lie from the Supreme Court to the 
Commission in all cases where such writs, respectively, would under like 
circumstances lie to any inferior court or officer.
 
 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1992 OK CIV APP 37, 839 P.2d 676, 63 OBJ 3205, Anson Corp. v. Corporation Com'n of State of Okl.
Discussed
 1994 OK CIV APP 76, 894 P.2d 422, 66 OBJ 627, McClain v. Ricks Exploration Co.
Discussed
 2006 OK CIV APP 12, 130 P.3d 776, HARDING & SHELTON, INC. v. SUNDOWN ENERGY, INC.
Discussed at Length
 1979 OK CIV APP 74, 597 P.2d 1221, KUYKENDALL v. CORPORATION COMMISSION
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 66, 764 P.2d 147, 59 OBJ 1694, Roberts v. Funk Exploration, Inc.
Discussed
 1989 OK 11, 769 P.2d 1388, 60 OBJ 207, Kaneb Production Co. v. GHK Exploration Co.
Discussed
 1990 OK 101, 801 P.2d 710, 61 OBJ 2540, Eason Oil Co. v. Howard Engineering, Inc.
Cited
 1990 OK 103, 825 P.2d 1262, 61 OBJ 2546, Henry v. Corporation Com'n of State of Okl.
Discussed
 1992 OK 117, 847 P.2d 333, 63 OBJ 2303, James Energy Co. v. HCG Energy Corp.
Discussed
 1993 OK 131, 863 P.2d 1176, 64 OBJ 3098, Bonner v. Oklahoma Rock Corp.
Discussed at Length
 1997 OK 26, 934 P.2d 1082, 68 OBJ 909, Minie v. Hudson
Discussed
 1930 OK 204, 287 P. 1006, 143 Okla. 187, PARKER v. RYAN
Discussed
 1979 OK 22, 591 P.2d 697, HINDS v. PHILLIPS PETROLEUM CO.
Discussed at Length
 1980 OK 133, 617 P.2d 215, Crest Resources and Exploration Corp. v. Corporation Commission
Discussed
 1981 OK 86, 651 P.2d 652, Union Texas Petroleum, A Div. of Allied Chemical Corp. v. Corporation Com'n of State of Okl.
Discussed
 1982 OK 122, 653 P.2d 204, Chancellor v. Tenneco Oil Co.
Discussed
 1951 OK 122, 244 P.2d 832, 206 Okla. 496, ELLISON v. SKELLY OIL CO.
Discussed at Length
 1943 OK 316, 145 P.2d 422, 193 Okla. 507, THOMPSON v. JOHNSON-KEMNITZ DRILLING CO.
Discussed at Length
 1984 OK 52, 687 P.2d 1049, Tenneco Oil Co. v. El Paso Natural Gas Co.
Discussed
 1985 OK 104, 711 P.2d 98, 56 OBJ 2928, Nilsen v. Ports of Call Oil Co.
Discussed
 1985 OK 109, 712 P.2d 55, 57 OBJ 43, Mullins v. Ward
Discussed
Title 52. Oil and Gas
 Cite
Name
Level

 52 O.S. 87.1, Common Source of Supply of Oil - Well Spacing and Drilling Units
Discussed at Length
 52 O.S. 111, Collateral Attack - Appeals - Supreme Court
Discussed at Length